In Special Term—November 1854. STORER, J. presiding.

[Action for the recovery of personal property.]

### AUGUSTUS ISHAM *vs*. THOMAS GREENHAM.

A common carrier, or other bailee for the transportation of property, must permit the consignee, if he requests it, to examine the cargo at the place of delivery, before he can demand his freight.

The duties of the carrier, and consignee, are correlative : the one to deliver, and the other to pay the freight; both are mutual acts.

Where the carrier demands a larger sum than that which is stipulated by contract, and refuses to deliver the property, at the place of its destination, until such additional sum is paid, he may be sued in tort for the conversion.

Where the carrier refuses to receive any sum less than the whole amount he thus claims, and the consignee offers to pay the sum stipulated in the contract, no formal tender of that sum is required from the consignee : the law in such a case will not ask him to do a vain thing.

On the trial, the plaintiff proved 'that his correspondent in Toledo, Ohio, in September last, shipped on the canal boat St. Mary's, of which the defendant was master, thirty tons of ice, to be carried to Cincinnati, and delivered to plaintiff without delay; the stipulated freight being eighty dollars and the canal tolls in addition. The defendant signed a bill of lading, embodying the contract as proved.

On the arrival of the boat at Cincinnati, the plaintiff called upon the defendant and expressed his readiness to receive the ice, stating at the same time, as the weather was very hot, it was necessary to land the cargo, and place it immediately under cover, the ice house of the plaintiff being but a short distance from the place of landing, and preparations were immediately made for that purpose. To this application the defendant returned for answer, that he would not permit the ice to leave the boat, until not only the sum agreed upon for freight and tolls, was first paid, but twenty-five dollars in addition, for a claim which he asserted for damages said to have been sustained somewhere upon the passage from Toledo, by the *detention* of the boat. This additional sum, the plaintiff refused to pay, but proffered to pay the amount stated in the bill of lading; this was in return refused by the defendant, who, declining to deliver the cargo, except upon the terms he prescribed, the plaintiff commenced this action and obtained an order for the delivery of the ice.

The case was submitted to the Court by the consent of the parties, and after a full hearing, judgment was rendered for the plaintiff.

STORER, J.

The defendant asks for a new trial, on the ground that his lien for freight gave the right to retain the property

until the amount was paid, or tendered, by the plaintiff; and though there was an offer to pay the freight, there was no exhibition of the money to the defendant at the time the offer was made, and the defendant therefore, might well refuse to deliver, until he was satisfied of the plaintiff's ability to pay, should the tender have been accepted.

The plaintiff on the other hand, insists that the defendant had no lien but for the freight agreed to be paid, and the assertion of a lien, beyond that sum, was an unlawful assumption of authority over the property, which when coupled with the refusal to deliver, except upon his own terms, was equivalent to a conversion in law; that the defendant having placed himself in this position waived a formal tender of the real amount due, and could not require it to be made.

It is very clear that unless there is a stipulation for the payment of freight at some other place, and at some other time, than the point of delivery, the carrier has a lien upon the cargo for his freight, and cannot be compelled to release it, except by the payment or tender of the amount.

The stipulation in the bill of lading, that the property shall be delivered to a consignee, on the payment of freight, creates a correlative duty on the part of the carrier and the consignee, the one to deliver, and the other to pay. Neither are compelled to perform their part of the agreement, unless both are ready and willing to act in good faith. As the obligation to perform is mutual, neither can avoid the duty imposed upon each, and claim at the same time the protection of the law. There can be no advantage gained by retaining the cargo on board the vessel, or refusing to break bulk that the condition

of the cargo may be known, for the consignee is clearly entitled to examine it, and ascertain whether it is in such order as he will accept it or not; and where the carrier obstinately refuses to land the cargo, or to store it, still retaining his lien for the freight, he ought not to expect that his conduct will be regarded with a favorable eye, should the question be subsequently litigated.

"Where there are mutual acts to be performed by contracting parties at the same time, neither party is bound to do the first act, but each is bound to perform his own; and he who is able and ready, has a right of action against him, who is not." Hammond *vs.* Gilman, 14 *Conn.* 479. In Tate *vs.* Meek, 8 *Taunton* 280, Chief Justice Gibbs decides the precise point; see also Yates *vs.* Railston, 8 Taunton 302, and Christie *vs.* Lewis, 2 *B. & Beattie* 410.

Without disputing the carrier's lien in the present case for his whole freight, it cannot be claimed that it could assert it for any other amount than that stated in the bill of lading.

There can be no lien for unliquidated damages; nor for any breach of covenant to furnish a full cargo, nor for demurrage, nor for pilotage or port charges. As the contract of affreightment is the only basis of the lien, it is never extended to embrace any other claim than that stipulated to be paid for the carriage of the goods; all else must be matter of special agreement.

In Bailey *vs.* Gladstone, 3 *M. & S.* 205, the Court of King's Bench held, that the "owner could not detain the goods for dead freight or demurrage," and a bill being afterwards filed in equity, to set up the lien, Sir William Grant, Master of the Rolls, dismissed it. 2 *Merrivale* 401, Gladstone *vs.* Bailey; see also Philips *vs.* Rodie, 15 *East* 547; 9 *Mees & Welby* 657, Jones *vs.* Tarleton.

If there was no lien, that the defendant could set up for his damages, what was the effect of including such a claim in his demand for freight, and refusing to deliver the cargo until the whole amount was paid?

On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods indicates clearly that the tender, if made, would not be accepted, the other party is excused from the technical performance of his agreement. The law never requires a vain thing to be done.

So when the creditor declared he would not receive the money, if tendered, it was held that the debtor need not make the tender; 2 *Wash. C. C. R.* 143 ; and in that large class of cases where the vendor contracts to deliver a chattel at a given time and place, and the conduct of the vendee is evasive and inconsistent, implying bad faith, it will be for the court to decide, sitting as they did in this case, as a jury, whether a formal tender should be required or not. It ought not to be required, that a strict rule should be applied to one party, where the other had shown himself not only careless of his obligation, but had rendered a strict compliance unnecessary ; 4 *Pick.* 258, Gilmore *vs.* Holt; 5 *Mass.* 74, Borden *vs.* Borden.

It would have been useless, then, for the plaintiff to have tendered the amount due as freight, when he had already been told it would not be accepted. The claim asserted by the defendant was illegal, and having refused to deliver the cargo, unless that claim was paid, the plaintiff had nothing to do but to regard the carrier's acts as unlawful, and hold him responsible for the value of the property in tort.

In Blair *vs.* Jeffries, *Dud. S. C. R.* 59, it is held that

if the carrier refuses to deliver the goods for any other cause than the non-payment of freight, he cannot avail himself of the want of a tender of the freight. See also Angel vs. Carnes, § 346.

This ruling is the result to which the analogous cases conduct us. Where one party, having a just claim, destroys it by adding that for which there is no authority in law, and no agreement of his co-contractors; and when the effect is to assume a control over property not authorized by the relation of creditor and debtor under the agreement, it is a direct appropriation, to the use of the carrier, and he must answer for his unauthorized act to the owner of the goods. The remedy may be trover or replevin, at his option, as the evidence will sustain either form of action.

This view of the case disposes of the points taken by the defendant's counsel, as to the necessity of an actual tender, and the many cases quoted in the argument, can have no application to the case.

We hold, under the circumstances, that no tender was necessary; and if there had been, it was waived, and rendered unnecessary by the conduct of the defendant.

The motion for a new trial must be overruled.

A. S. SULLIVAN for plaintiff.    TODD for defendant.