Spear, J.
At the outset we inquire : Had the husband, independent of any relation as agent for the wife, power to surrender the policy ? He could stop paying premiums. That would have left the wife to continue the policy in force for its full amount by herself making payment of premiums; or, she could have declined to pay and receive a paid up policy for a lesser amount, and this she would do, not by the grace or favor of the company, nor yet by virtue of any new agreement with the company, but by force of the original contract and the law applicable thereto.
It is now too well settled to admit of dispute that a beneficiary for whose benefit a promise has been made by one upon a sufficient consideration moving from a third person, may maintain an action upon that promise; and if the beneficiary has acted on the promise so as to have changed position, or acquired a vested right, the contract can not be changed without, his consent. The case at bar is a stronger case than the one supposed, in that the application was made in the name of the vrife and the contract itself made directly with her, though the risk was on the life of the husband. There was value in the policy, and at least to that extent the wife’s right in it was a vested right. She was the beneficiary named in it, and upon both reason and authority we think it clear that no new contract or arrangement of any kind which affects the vested rights of the beneficiary in the policy can be made with the company *164 alone by the insured. Bliss on Life Insurance, sections 337, 345, 571, and the cases cited by counsel, abundantly sustain this position. "We conclude that the husband, in this case, had no power to surrender the policy merely because he was the insured party and had paid premiums. Had he any other standing regarding the transactions which gave him such right? In the payment of premiums he, in law, was her agent. If he had the right to act for her at all it was because of this relation as agent. Was he her agent at the time he attempted to surrender this policy? and what was the company, with the knowledge furnished by the letters as to his attitude toward his wife, bound to understand? By his letter of April 27th, in which he iuquired if the policy could be transferred, he gave the company to understand that he was seeking a result on the face of the transaction inconsistent with her interests. This was, of itself, significant and suggestive. And when it was followed by the letter of May 3d, giving the information that his wife had separated from him and sued for alimony, and renewing his request that the policy be made payable to his estate because he was obliged to provide her with alimony and because she was no longer a wife to him, it is idle to claim that the company was not apprised of facts from which it was bouud to presume that his relation of agent had ceased. He could not have made the fact clearer had he included a direct statement to that effect. The relation of principal and agent implies trust, confidence. Here was antagonism, and a direct effort to sacrifice her rights for his benefit. The company was bound to know that as agent he could not lawfully do that. The husband not having any authority then, either by reason of having paid premiums, or by his position as the insured in the policy, nor yet as agent for the wife, to make a surrender, it follows that the attempted surrender of the policy was inoperative, and that the rights of the beneficiary were not impaired by the attempt.
But the company claims that, independent of the question of surrender, there can be no recovery beyond the *165 sum of $810, because the policy was forfeited by the failure to pay the premium due June 4,1880. To this it is replied that there could be no forfeiture without notice to the beneficiary, such as had been uniformly given during the entire life of the policy, 'and that she had not, up to the commencement of the suit, been notified either of the amount of the premium to be paid, or of any purpose on the part of the company to forfeit the policy. On this question of notice the company insists that the notice given the husband was, in law, a notice to the wife, for that, whatever was the fact as to his agency at the time his letters to the company were written, they do not show when the separation took place, and for all that appears, it was after the notice of April 24,1880, was received by him. We confess we are unable to perceive the force of this claim. As early as the 29th of April, five days after the notice was mailed, the company was apprised that Smith was acting contrary to the interest of his wife, and seven days later a full disclosure of his purpose was made. In the light of these facts, and of the irresistible inferences to be drawn from them, it will hardly do to claim seriously that the company was justified in assuming that he was agent for the wife April 24th. As matter of fact, the alimony suit had then been pending about six months. It being shown, therefore, that notice to the husband was not notice to the wife, and it appearing further that she had no actual notice, we are led to inquire what effect this state of facts has upon the rights of the parties ?
It will be borne in mind that by the contract Mrs. Smith was entitled to share in the profits of the company, and that, as to part of these profits, they were paid out by annual dividends, the remaining portion being retained by the company and inuring to her benefit by accretions to the policy, and that the uniform custom had been that the company should give timely notice, not only of the date when the amount to be paid as premium would become due, but as well the amount of the dividend and the ámount of balance to be paid in cash. What dividend in any year was *166 declared, and what amount could be used to reduce the premium were facts known to the company, but not to the insured. Without this information the insured or beneficiary could not, in the ordinary course of business, know-how much was to be paid as premium each year, and could not, therefore, pay it. The ease is to be distinguished from one where the premium is a fixed amount; and from a ease, slightly differing, where, although there may be dividends which the policy-holder, at his option, may have applied as the.premium, yet there is no agreement and uniform practice that the dividends are to be deducted each year from the premium and the balance only paid to the company. It may, probably, he safely conceded that in either of the two supposed cases the assured would have no right to depend upon a notice from the company, not even if the company had ordinarily sent such notice. For the very life of successful life insurance depends upon prompt payment of premiums, and their business would be thrown into utter confusion if companies had no,means of protecting themselves by forfeiture for non-payment of premiums. But, while this is true, the contract is nevertheless an entire one of assurance for life, and the payment of the premiums, after the first, is not a condition precedent, but a condition subsequent, and the parties may deal in sucli way between each other as to estop the company from insisting upon a forfeiture where it would be inequitable for a forfeiture to be declared.
Can the company insist upon a forfeiture in this case? The premiums were paid regularly for sixteen years; the company undertook to make a new contract with a person wholly without authority to act for Mrs. Smith, ignoring her altogether; her residence was given in the application as at Cincinnati, and the presumption would be that she continued to reside there; the exact place of residence was not hard to find; the company had an agent in the city all the time, and could, without trouble, have given her notice, but no effort even of the slightest character was made to acquaint her with that which she, of all persons, was interested *167 in knowing and entitled to know. Courts are liberal in construing transactions in favor of the avoidance of a forfeiture. There are no presumptions in favor of a right by forfeiture, for forfeitures are abhorred in equity, and are never favored in law. Upon the facts shown it appears manifest that this claim of the insurance company is inequitable, and we are of opinion that it is not maintainable in law.
A recent ease decided by the supreme court of the United States is believed to entirely cover the question here involved as to the effect of failure to give notice. We refer to Phœnix Ins. Co. v. Doster, 106 U. S. 30, and quote from it sufficiently to show its application to the case at bar. The policy was issued September, 1871, upon the life of Jackson Riddle, in consideration of the payment by the wife and children of the insured (who were named as payees in the policy) of the sum of $215, and the annual payment of a like amount on or before the 20th of September in every year during its continuance, and contained astipulation that if the premiums be not paid on or before the day of maturity the company should not be liable for any part of the sum insured, and the policy to cease and determine, all previous payments being forfeited. The policy was upon the half-note plan, which gave the insured the right to discharge one-half of the first four premiums by notes, and upon .the fifth and subsequent payments to have his dividends, if any, applied in reduction' of the premiums. Notices were sent to the insured prior to the 20th of September in 1872, 1873, and 1874, showing when premiums became due, amount of cash to be paid, interest on’ the notes, and amount for which additional note was required. Prior to the 20th of September, 1875, notice to the insured was sent, which stated amount of dividend to be applied in reduction of that premium, interest to be paid on notes previously executed, and the sum to be paid in cash.
On the 6th of October, 1876, the insured lost his life in a railroad accident, leaving unpaid the premium due on the 20th of September previous, though before starting from *168 home he had made arrangements to pay the amount required as soon as notice was received. His residence and post-office for more than a year had been at Oxford, Ind., which was known to the company’s general agent at Chicago. On the 4th of October, 1876, there was sent from the general agent’s office, addressed, by mistake, to the insured at Fowler, Ind. (where he never resided), a notice similar to that given in 1875. This was received by a son of the insured the day the father was killed. On the 9th of October, 1876, the amount due was tendered to the company’s general agent at Chicago. He declined to receive' it, on the ground that the policy lapsed, by reason of nonpayment of premium due, the 20th of September, 1876.
On the trial in the circuit court the court charged the jury, among other things, to the effect that “if they found from the evidence that it bad been the invariable custom of the company to transmit to the insured a statement of the amount of the premium due, after deducting the dividend, with a notice of the time when, the place where, and the person to whom, the premium could be paid, then the insured had good reason to expect and rely on such statement and notice being sent to him; and that if the company, by its managing agent, had notice of the post-office address of the insured before the usual time of sending out notice, but failed and neglected to transmit such statement and notice until the 4th of October, and the same did not reach him or the payees in the policy until the 6th, and that the insured or payees were ready and waiting to pay said premium when notice and statement should be received, and by reason of such failure to send the notice and statement, and of that alone, the premium due in September, 1876, was not promptly paid; and that in a reasonable time thereafter the payees tendered the full amount of the premium, then the policy did not lapse or become forfeited, notwithstanding the premium was not paid on the day named in the policy, and in the life-time of the insured.”
*169 Ajudgment was rendered against the company and the case taken upon ,error to the supreme court. The opinion was delivered by Mr. Justice Harlan, who, in commenting upon this part of the charge, uses this language: “We are of opinion that these propositions are substantially correct. Nor do we perceive that the rulings of the court below are in conflict with our decision in Thompson v. Ins. Co., 104 U. S. 252. . . . The present case has features which plainly distinguish it from the Thompson case. In the former there was a tender of the premium within a few days after the death of the insured, and as soon as the payees ascertained the sum required to be paid. In the latter, the amount to be paid was fixed. It was not liable to be reduced on account of dividends, or for any other reason, and the insured, therefore, knew the exact amount to be paid in order to prevent a forfeiture of the policy. Now, although the policy issued upon Riddle’s life required payment annually of a specific sum as a premium, that stipulation must be construed in connection with the agreement set out in the application, that the premium might be discharged pro tanto by such dividends as were allowed-to the insured From time to time. Whether the company, in any particular year, declared dividends, and what amount was available in reduction of the .premium, were facts known, in the first instance, only to the company, which had full control of the matter-of dividends. It certainly was not contemplated that the insured should every year make application, either at the home office or at the office of its general agent in Chicago, in order to ascertain the amount of dividends. The understanding between the parties upon this subject is, in part, shown by the practice of the company. Independently of that circumstance, and waiving any determination of the question whether the forfeiture was not absolutely waived by the act of the general agent, in sending notice to the insured after the day fixed for the payment of the premium due September 20, 1876, it was, we think, the company’s duty, under any fair interpretation of its contract, having received information as to the post- *170 office of the insured, to give seasonable notice of the amount of dividends, and thereby inform him as to the cash to be paid in order to keep alive the policy. It did, as we have seen, give such notice in 1875, and received payment of the amount due after the date fixed in the policy. Within a reasonable time after the notice for 1876 came, in due course of mail, to the hauds of one of the payees, a tender of the amount was made to the general agent at Chicago. No such features were disclosed in the Thompson case, and they are, as we think, sufficient not only to distinguish th-e present case from that one, but to authorize the instructions of which the company complains. . . . Judgment affirmed.”
Undue importance must not be given to the fact of preparation by the insured for the payment of premiums before leaving home. The date of leaving home is not disclosed, and for aught that appears the preparation may have been made after the 20th of September. At best its tendency was but to show readiness on his part to comply. The fact is not alluded to at all by Justice Harlan in his comments upon: the action of the court below. It will be observed that a point of difference in the two cases is that in the Riddle case tender was made; in this case it was not. But it must be kept in mind that a notice which the company’s agent sent, actually reached one of the beneficiaries the day of his father’s death, and he had, therefore, the information on which to act. Mrs. Smith had no information, and the neglect of the company was the cause of that igno-. ranee. The beneficiary in the Riddle policy was apprised of the sum to be paid and that it was due; the beneficiary in the Smith policy was kept in ignorance of that sum and of time for payment. There are other questions involved in the Riddle case, but they are not believed to at all affect the case before this court.
The action of the company in the case at bar was in effect a repudiation of its promise to pay the amount stipulated in the policy. Even had Mrs. Smith learned the amount and time of payment after the death of her hus *171 band, a tender would have been a useless ceremony. “ On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done.” Isham v. Greenham, 1 Handy, 361. See also Brock v. Hidy, 13 Ohio St. 310. Notice was essential to a forfeiture. The company gave none, and by its course of action waived the forfeiture which might have arisen from nonpayment of premium due June 4, 1880, and it is now es-topped from setting it up.
We are aware that the views herein expressed as to the effect of failure to give notice áre notin accord with a number of reported eases, but they are directly supported by the decision of the highest court in the land, and inferentially by decisions of'many other courts, and we believe they rest upon the firm ground of sound principles. There was no error in the instructions given the jury at the trial, nor in the refusals to charge as requested ; and an examinanation of the record discloses no error in the admission or exclusion of testimony prejudicial to the company. It follows that the action of the court at general term in overruling the motion for new trial and entering judgment on the verdict was not erroneous.

Motion overruled.

Johnson, J., did not sit in this case.