### *CHAUNCEY H. ANDREWS v. WILLIAM WATSON.

**1. AUCTION SALES—EVIDENCE AS TO QUANTITY SOLD.**

Evidence that an auctioneer at a sale announced that forty shares of stock of a fair association would be sold in lots of ten shares with the privilege of as much as the purchaser desired, is competent as bearing on the quantity sold,

---

* Affirmed by the Supreme Court, unreported, 51 Ohio St. 619. For previous decision of the circuit court, see *ante*, (preceding case).

Andrews v. Watson.

in an action for damages for breach of contract in that the purchaser refused to take more than ten shares, where it appears that the announcement was made in the presence or hearing of the purchaser.

**2. FACTS WHICH DO NOT ESTABLISH A PARTNERSHIP.**

The fact that father and son, owning forty shares of stock in a fair association, the father owning thirty and the son owning ten shares, sold the same together, ten shares being put up at a time, with privilege to the purchaser of taking as many as desired, at a public auction held by the father, does not make them partners so that the declarations or acts of the son, unknown to the father, are binding upon the latter.

**3. ACTS AND DECLARATIONS NOT COMPETENT.**

Under the circumstances stated in the preceding paragraph, where the purchaser, in a suit to recover damages for failure to accept and pay for the forty shares, claimed that he purchased only ten shares, the fact that the son, owning but ten shares, met the purchaser and received his check payable to the father for ten shares, with the understanding that ten shares was all that the buyer purchased, and the fact that the father received the check, endorsed the same and turned it over to the son, are not competent, where it does not appear that the father knew or was informed of the understanding with the son, to show that the father released the purchaser from accepting the balance of the stock.

**4. VENDOR MUST TENDER PERFORMANCE.**

The vendor of shares of stock of a corporation, sold at auction, is bound to tender performance on his part or offer to transfer and assign the stock or certificates so sold to the defendant himself, or to some one authorized by him, unless the latter waives the tender.

**5. QUESTION OF TENDER PROPERLY SUBMITTED TO JURY.**

Where, in an action to recover damages for breach of a contract for the sale of stock, plaintiff testified that some time after the sale he met defendant and asked him to take the stock, and defendant, on the witness stand, stated that he had no recollection of meeting plaintiff, and denied that a tender was made, the question of tender or offer to perform was properly submitted to the jury.

**6. MEASURE OF DAMAGES.**

Where the purchaser repudiated the contract and thereby waived the straight performance thereof, the seller is entitled to recover the difference between the market value and the contract price, as damages for the breach of the contract.

**7. CREDIBILITY OF WITNESSES.**

Where the testimony of two witnesses is directly contradictory, it is for the jury to determine the credibility of each and their finding should not be disturbed by a reviewing court.

HEARD ON ERROR.

WOODBURY, J.

In the case of Chauncey H. Andrews against William H. Watson, we have a petition in error to the court of common pleas in this county, in which the petition was filed by the defendant in error to recover from the plaintiff in error, Chauncey H. Andrews, damages for the non-performance of a contract for the purchase of stock in the name of the Mahoning and Shenango Valley Fair Association.

The plaintiff alleges in his petition that on October 17, 1882, he was the owner of forty shares of the capital stock of the Mahoning and

Shenango Valley Fair Association, a corporation duly organized under the laws of the state of Ohio, and that he duly advertised said stock for sale; that on that day and at the time and place named in the advertisement said stock was put up for sale at auction, ten shares with the privilege of the whole, in substance, or with the privilege of as much as was desired. It is alleged that Chauncey Andrews, upon that auction bid, ten shares being put up, $20 a share and that it was finally struck off to him, and it being inquired of him how much he would take, he answered that he would take the whole of it, and it is alleged that the plaintiff, not in pursuance of any terms, tendered to the defendant, Andrews, said stock, ten shares of it and received pay for it, but the thirty shares he refused to pay for and that he still neglects and refuses to pay for the same, and it is alleged by reason of the failure of Andrews to perform this contract, the plaintiff has been damaged in the sum of $600.

The defendant, Andrews, denies the purchase of the thirty shares of stock and in substance alleges that he did purchase the ten shares of stock, and then sets up a further defense that the plaintiff and his son were in partnership in the sale of this stock, and that at the time of the receipt and payment for the ten shares of stock with the defendant, Chauncey H. Andrews, that he had only purchased ten shares of stock and that that was the contract, in substance, and that contract he was willing to perform, and that William Watson, Jr., I think it is William, Jr., then transferred to him the ten shares of stock and received his check, that is Andrews' check, for $200, in full performance and discharge of the original, alleged contract, and that, therefore, the strict performance of the contract is waived, and that Andrews was only liable for the ten shares, and that if there was any original liability upon the thirty shares he was relieved therefrom by the payment for the ten shares.

The case went to trial and there were several exceptions taken. First, it is claimed there was no proof in the case to show any performance of the contract on the part of the plaintiff below, Mr. Watson.

This depends upon the evidence of Mr. Watson, the plaintiff, and the testimony of Mr. Andrews. The plaintiff testifies that some two or three weeks after this auction sale, he came to Youngstown, having been here prior to that time, for the purpose of transferring the stock which he was expected to do, that some two or three weeks after this and after the ten shares of stock had been received and transferred to Andrews and paid for by him, that he met Mr. Andrews upon the Diamond and had a conversation with him in regard to this stock and his testimony is to this effect:

"Did you have a conversation with him and what was it? A. I asked him why he told Garlick not to transfer that stock.

"Q. What did he say? A. Why, Mr. Watson, you want me to pay double; I could buy it on the street for that; I says, 'what did you buy it for?'

"Q. What did he say? A. He didn't say a word; that was all the answer I made.

"Q. What did you say, if anything, as to being ready and willing to transfer or give him the stock? A. I asked him to take it; I wanted him to take it and he wouldn't."

Upon objection the court struck out "I wanted him to take it," so it leaves his answer "I asked him to take it and he wouldn't."

That was all the conversation there was between the parties in regard to it and that is all the testimony in the plaintiff's testimony bearing upon the question.

When we come to read the cross-examination, it appears that he was not inquired of in regard to that conversation and it leaves it stand as we find it here.

On the examination of Chauncey H. Andrews, he testifies that he has no remembrance of meeting Mr. Watson on the Diamond and testifies he never tendered him the stock; that he, Andrews, never told him he would not take it, but he does deny, of course, as well as in his answer, that he ever contracted to buy more than ten shares of stock, and that is the defense in this case.

Now upon the question whether this would show, or be evidence tending to show, performance on the part of Mr. Watson of this contract, we think it would be evidence tending that way quite strongly, and if true, would be a sufficient tender of performance on the part of Mr. Watson.

In regard to the conversation between Mr. Watson and Mr. Andrews, it varies upon the testimony of Mr. Watson and Mr. Andrews, still Mr. Andrews does not deny the conversation there. He says he has no remembrance of it, but he denies that a tender of the stock was made; there are the two witnesses; one testifies in substance one way and the other the other way, and it is one of that class of cases where the weight of the facts is to be determined by a jury and a reviewing court would not be authorized, in judging upon this testimony, where one witness concerned testifies one way and the other the other way; and we find that much upon this question was clearly against the facts and very much depends upon the credibility of the witnesses; not only upon them, but upon other witnesses, and the jury having the witnesses before them, seeing and hearing them testify, could very much better judge of each witness than a reviewing court.

These things may depend very much upon the circumstances; one man's memory may have been very much better than the other's, such things would depend, of course, quite largely upon the amount of business to which a man is attending. A man who is attending to very little business would be very much more likely to remember all the details in it and the conversations which he had in regard to it, than the man who is attending to a very large amount of it and with a large number of individuals. Such a person would not be as likely to remember the details of a conversation as well as though it were the only conservation in his life. Very many at this bar can remember the details of their first lawsuits, and probably the first few lawsuits they were in and helped to try. Those who have only tried a half dozen would probably be able to remember the details of them all, but a person who has worked himself into a practice involving from fifty to one hundred in a year, his memory retains less and very many times he is liable to forget them all, as to the details. It is so with any one in any kind of business. In this case, under this proof and these two witnesses, we are not warranted in saying that the verdict was against the weight of the evidence.

The next objection is as to what was said to the auctioneer. It appears from the testimony of the witness, Mr. Watson, that after a considerable of the property had been sold, they reached a point where this

stock was put up for sale, and the inquiry was made of Mr. Watson, by the auctioneer, as to how it was to be sold, and that Mr. Watson responded by saying it should be put up ten shares at a time, with the privilege of the parties taking as much as they wanted.

Now then, the competency of this conversation depended, of course, upon whether it was in the hearing of Mr. Andrews, and so Mr. Watson, as well as other witnesses, were inquired of as to where Mr. Andrews was at the time this conversation occurred, and when the stock was put up for sale, and the testimony shows that he was away somewhere in the neighborhood of thirty yards; and then a witness is asked as to the tone of voice in which this conversation was carried on, whether in a loud voice or whether it was in a low voice; he testified that it was in a loud voice; and then follows the statement of the auctioneer that he was to put up this stock, that he was to put it up ten shares at a time, with the privilege of the party taking so much of the stock as he wanted; that he was going to put up forty shares, ten shares at a time, and the testimony is that this was said in a loud tone of voice, or was declared by the auctioneer in a loud tone of voice so they could hear it in fact; and Mr. Andrews himself testifies that the auctioneer spoke so loud that he could hear all that he said whenever he paid attention.

Now whether this evidence was competent or not, depended upon whether the words were in a tone of voice and under such circumstances that Mr. Andrews heard them; it was only important at all upon the question as to whether or not Mr. Andrews heard what the auctioneer said, as to the way and manner in which he was going to sell that stock. Now we think this all depends upon whether or not the statements were heard by Mr. Andrews. If they were heard by him the evidence was entirely competent; and, as stated by Mr. Andrews in his testimony, the auctioneer spoke loud enough, not only at the time he put the stock up and cried it, but when he struck it off, so that he could have heard it if he had been paying attention. Under these circumstances we do not think the court erred in admitting this testimony.

The next objection to the testimony is that the court erred in permitting the witness, Watson, as well as the others, to testify as to the market value of this stock, and this is based upon the ground that this was an action, not to recover damages, but for a specific performance of an action to recover the contract price. After an examination of the petition, I may say, we are satisfied that the petition at least is sufficient to entitle the plaintiff below to recover damages for a breach of the contract; in fact that is the prayer of the petition, that by reason of the non-performance of the contract on the part of the defendant below, the plaintiff had sustained damages in the sum of $600 and asks judgment with interest. It was tried by the court below, eventually upon this theory, the court allowing this evidence for the purpose of showing the market value, to recover the difference between the market value of the stock and the contract price, so that upon this theory, and if we think right in this, it was entirely competent for the plaintiff below to show what the market value of the stock was

The next objection claimed is that the court erred in admitting or excluding the conversation between Andrews and William Watson, Jr., at the time that the ten shares of stock was paid for by Mr. Andrews and transferred by William Watson to him. We have had some little difficulty in regard to the competency of this evidence. Andrews sought to show, or his counsel through him, when he was upon the stand as a

Andrews v. Watson.

witness, that when William came down and transferred that stock, that Mr. Andrews then told him that he only bought ten shares of stock, and that William responded by saying "I told father I didn't think that Mr. Andrews understood that he was buying all of the stock before I came down, and that if he paid for the ten shares of stock it would be all right."

The substance of that was what was proposed to be proved by Mr. Andrews as to the conversation with William. This, perhaps, is based upon two grounds. One is that it is alleged that William and his father were partners in the sale of this stock. Under the proof upon this question, that partnership is denied. The proof upon this question shows substantially this state of facts; that William owned ten shares and his father owned thirty, and that it was the understanding or agreement between William and his father, that this stock should be put up, that is all the stock should be put up, William's ten and the old gentleman's thirty, and in pursuance of that arrangement and agreement it was put up and sold, and the old gentleman undertakes to claim that he controlled it, but it is immaterial; it is substantially in the same condition as though Mr. Watson, having a sale, proposed to sell stock of his neighbor's, directed it to be sold at that auction; now if the property was all sold together as a bulk, certainly then the purchaser would be entitled to demand the whole property, but would that make the parties partners in the transaction?

Suppose, under such circumstances, the property was all sold in bulk by the auctioneer at a given price, and one of the parties holding an interest, not in the whole, but in portion of the property, should release or rescind the contract, or undertake to rescind the whole contract, and under such circumstances have power to do so without the consent or without the knowledge of the owners of the balance. Now upon this question we do not think there is any question but that it would be claimed, upon the part of the plaintiff below, is there such a partnership as would enable one party to release the other without his knowledge or consent, at least so far as the other was interested in that property?

But the proof shows that William did come down and that he transferred the ten shares of his own and that he received a check in payment, not payable to William, but to the old gentleman, and that the check was endorsed by the old gentleman and the money was received upon it, and under these circumstances, do the declarations of William bind the father?

There is no doubt that in certain cases he may be treated as agent of his father and sent down for the purpose of completing this contract, and according to the testimony of the father, and from his testimony, it is conceded by the father, the plaintiff in the action, that he received this check and that he endorsed it, and the $200 was received upon it.

Now this was proposed to be proved, however, without showing on the part of Mr. Andrews that William communicated to the father anything that was said between him and Mr. Andrews, or, in other words, without showing that at the time the father received the check and endorsed it and received the money, he had any knowledge of the terms and conditions upon which William had received it.

Now we think that if the plaintiff had received that check and the money and converted it to his own use with the knowledge, terms and conditions by which William had received it, he would be bound by it, but if he received it without any such knowledge on his part, he would

not be bound by it, because sending him down for the purpose of transferring the stock and receiving pay for it, would not have authorized William to have cancelled the contract or to have discharged Mr. Andrews from liability upon it, nor would it have authorized him to have transferred part of it and to have discharged him from the balance of it, but William, in receiving the check, could only bind the old gentleman if he had knowledge, and there was no proof of such knowledge, and therefore we think there was no error in the court below in excluding this.

The next claim in the case is that the court erred in refusing requests and that the error committed by the court in its charge to the jury was in charging that the plaintiff was bound to tender performance upon his part unless the defendant, Andrews, had waived the tender.

Now the charge of the court was: "If you have found upon these propositions in favor of the plaintiff, then you will proceed to inquire further and ascertain whether or not the plaintiff offered to transfer or assign to the defendant the stock and the certificates so sold, or tendered to him the stock or the certificates representing such stock and offered to transfer and assign the same to the defendant. And such tender and offer must be made to the defendant himself, or to some one authorized by him to act for him and in his behalf, and a tender or offer to transfer made to the officers of the Fair association would not be sufficient unless the defendant had authorized such officers to act for him and they were so authorized at the time such offer was made. If he did not do so, and you so find, then he cannot recover, unless Andrews himself repudiated the contract and waived the mattter of a tender of the stock by the plaintiff to him at the time of the sale or subsequent thereto, and before the offer to transfer the same, if such offer was made by the plaintiff."

So this brings us to the question whether or not the plaintiff would be entitled to recover without an absolute performance if Andrews repudiated the contract and thereby waived the straight performance. Now upon this question, the rule is laid down in Benjamin on Sales, Sec. 853, in this way: "But the necessity for performing the condition precedent may be waived by the party in whose favor it is stipulated, either expressly, or by the implication resulting from his acts or conduct. This waiver is implied in all cases in which the party entitled to exact performance either hinders or impedes the other party in fulfilling the condition, or incapacitates himself from performing his own promise, or absolutely refuses performance, so as to render it idle and useless for the other to fulfill the condition."

"No authority is needed, of course, for the proposition that the party in whose favor the condition has been imposed may expressly waive it.

"The cases, however, are numerous to establish the propositions above stated, in relation to the implied waiver."

And it is again found on page 744 of this edition, and the case cited is Butler v. Butler, 77 N. Y., 472 [33 Am. Rep., 648]. The contract was to furnish materials and set up a gas machine in the buyer's hotel, for $1,500 to be paid when the works "are upon the grounds." The materials were sent to the premises and received, but the owner of the hotel refused to permit the machine to be set up. The seller claimed to recover the price and obtained judgment for the amount less $100 the cost of putting up the machine, and this was affirmed by the Supreme Court.

So again on page 747: "On refusal to fulfill can the other party sue at once without awaiting till the time for performance expires? And it is there laid down that he may.

In Manhattan Life Insurance Co. v. Smith, 44 Ohio St., 156, 170 [5 N. E. Rep., 417], which was an action upon a policy of insurance, the court say: "The action of the company in the case at bar was in effect a repudiation of its promise to pay the amount stipulated in the policy. Even had Mrs. Smith learned the amount and time of payment after the death of her husband, a tender would have been a useless ceremony. 'On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never required a vain thing to be done.'" And cites Isham v. Greenham, 12 Dec. (Re.) 182 (1 Handy, 357, 361). See also Brook v. Hidy, 1 Ohio St., 306, 310. And I may say this same rule is laid down in Watson v. Dun. Wright 741.

We think there was no error by the court in its charge to the jury under these authorities, and the case is therefore affirmed.