Bender v. Bean.

## BENDER v. BEAN.

1. ADMINISTRATION: *Relinquishment of land to vendor of decedent: Void oader, etc.*

Section 4 of chapter 3, of the so-called "Chapters of the Digest," adopted by the General Assembly in 1869, which provided that when lands of a decedent had not been paid for, the Probate Court might order the same to be relinquished to his vendor on the most advantageous terms that could be agreed upon, not having received legislative sanction did not become a law. An order made pursuant to said section in 1871, authorizing an administrator to relinquish his intestate's interest in certain lands was void; and not being in itself a sale, nothing was added to its validity by the act of 1873, providing that all sales previously made in pursuance of such "chapters," should be binding. Nor could that act impart any validity to a deed executed by the administrator after its passage.

2. SAME: *Same.*

An order of the Probate Court, made on the *ex parte* petition of an administrator, authorizing him to relinquish certain lands conveyed to his intestate, to the vendor thereof on the surrender of the notes given for the purchase money, does not bind the vendor, and if valid in other respects, could not be executed by the administrator after his removal. Nor could a conveyance for the purpose of such relinquishment, executed by the administrator after his discharge, be made effectual by an order confirming it, made by the court after its jurisdiction over the land had ceased by the close of the administration.

3. STATUTE OF LIMITATIONS: *When infants barred.*

In an action to recover lands the infancy of the plaintiff is no protection against the statute of limitations where it began to run in the lifetime of the ancestor under whom he claims.

4. TAX SALES: *Minor's right of redemption: Compensation for improvements.*
The right granted to minors by the act of 1873 (*Gantt's Dig.*, *sec. 5197*) to redeem their lands from tax sales at any time within two years from the expiration of their disability, was upon the condition, expressed in the same act (*Gantt's Dig.*, *sec. 5216*), that the Legislature might regulate the compensation to be paid by them for improvements thereafter placed on their lands by tax purchasers.

5. SAME: *Same.*
The provisions of the revenue act of 1883 (*Mansf. Dig.*, *sec. 5792*), to the effect that occupying tax-claimants of land shall be allowed the full cash value for improvements made after two years from the date of sale, applies to the redemption by minors of lands forfeited in 1876-7, and gives to the tax-purchaser the right to compensation for such improvements without exacting the showing of belief in the integrity of his title which is required by the "betterment act."

6. SAME: *Same: Minor's right not an estate: Rents.*
On the execution of a tax deed the purchaser becomes the owner of the land conveyed, and a minor's right to redeem it is not an estate in the land, but only a statutory privilege to defeat the tax title within a limited time. The purchaser is not, therefore, liable for rents until his fee is terminated by a redemption effected in the manner provided by law.

7. SAME: *Same: Tender of payments: Offer to redeem.*
A minor may terminate the fee of a tax-purchaser of his land by paying or tendering the sum prescribed by the statute as necessary to effect its redemption And an offer, made in good faith, to redeem, which is refused not because no tender or an insufficient tender is made, but because the right to redeem is denied, is as effective as a tender. But a joint tender by several persons is not good where one of them is not entitled to redeem.

8. SAME: *Same.*
Where on a bill brought by minors against several purchasers, to redeem lands from tax sale, the plaintiffs set out their respective interests and ask to be allowed to redeem as provided by law, there is an implied offer to pay to each of the purchasers the sum which the law allows him. And if such offer is met by no objection to its terms, or to the fact that no money is actually tendered, but by a denial of the plaintiff's right to redeem, and by the assertion of an adverse title, the purchasers should be charged with rents from the commencement of the suit where the judgment of the court sustains the right to redeem.

APPEAL from *Saline* Circuit Court in Chancery.

J. B. WOOD, Judge.

*P. C. Dooley* and *C. Altenberg,* for the Bender heirs.

The administration having closed, the Probate Court had no authority to order a sale of the lands. It was without jurisdiction. *Const. 1868, art. 12, sec. 5; 15 Ark., 412; 48 id., 360;* but if it had authority to sell, title could not be passed by the proceedings had, which were wholly without authority and void. *40 Ark., 220; 7 Tex., 617; ib., 240.*

The pretended "relinquishment" was never confirmed by the Probate Court. *47 Ark., 413.* Nor are there any appropriate words to *convey* title.

The Probate Court has no power to foreclose or adjust vendor's liens. *27 Ark., 306; 28 id., 266; 43 id., 464.* The order for the sale of the homestead was void. *29 Ark., 633; 37 id., 316.*

The Douglass heirs not barred; the statute does not run until the youngest heir is of age. *47 Ark., 504; ib., 445.* It is less than seven years from the death of Douglass to the institution of suit. *41 Ark., 149.*

2. A minor could not be required to make compensation for improvements beyond the value of the rents and profits. *33 Ark., 490; 42 id., 118.* Nor can they be improved out of their estate. The benefit of the betterment act inures only to those who act *bona fide* and believe in the justice of their title. *47 Ark., 528; 8 Wheat., 79; 45 Ark., 419; 46 id., 333; 47 id., 445.* The element of honest belief in ownership is wanting in this case.

If Haynes & Helms are allowed for improvements over the rents, they should be charged with the improvements when they donated it. No tender was made therefor. *42 Ark., 330.*

Minors may redeem at any time within two years from their minority. *Secs. 5771, 5775 Mansf. Dig.* The latter section fixes the amount to be paid. The act of March 14, 1879, p. 69, is silent as to the amount to be paid; but section 10, p. 70, Acts of 1879, gave minors the right to redeem "as provided by existing law. The Acts of 1877, section 1, p. 29, saves the minor's right to redeem in the manner now provided by law," or here-

after may be prescribed.  None of these laws, after the first make any provision for the amount to be paid.  The Acts of 1875, section 17, p. 227, provides the amounts to be paid on redemption, and this was the law in force when the land was sold in 1877 for the taxes of 1876.  See *sec. 5197 Gantt's Digest;* also, *5700 ib.*  The Acts of 1871 changed the amount to be paid· *Acts 1871, sec. 114, p. 166, and sec. 116.*  The Acts of 1869, p. *59,* section 131, also change the amount by adding 100 per cent. penalty.  See also *Acts 1868, p. 277, sec. 57.*

From this review, it is evident that minors had the right to redeem for two years after attaining full age, but nothing is said of improvements.  The act of January 10, 1857, if applicable, provides for the tender of the full amount of improvements made by the tax-purchaser.  In *41 Ark., 149,* it was held that the law was " revised and modified " by the Acts 1868-9, so far as "the amount to be paid the purchaser at the tax sale before he can be evicted."  *43 Ark., 398.*

The act of 1873 covers the same matter as sec. 2, act 1857, and sec. 17, act March 5th, 1875, p. 227, is on the same subject precisely as sec. 117, act 1873.  Both are revenue laws and are inconsistent; the act 1873 is repealed, as well as sec. 2, act 1857, and the act 1875 does not apply to the redemption of lands sold for taxes 1876.  The redemption from tax sales is governed by the law in force at the time of sale, and is not affected by subsequent legislation.  The law of 1857 provides only for a tender of the value of such improvements as were made after the time for redemption expired.  And to a minor two years after his majority.  See, *Black, Tax Titles, sec. 169; ib., sec. 199, 193–4, 268.*

The improvements in this case were put on by defendants, knowing that there were minors.  See, on this subject, *Sedg. & W. on Land Titles, sec. 690–4; 33 Ark., 495; 41 Ark., 120; 47 id., 456.*

The law in force at the time of sale controls the amount to

be paid for redemption. *Black, Tax Tit., sec. 175; Cooley, Tax, 369-370.*

The transaction was not even in accordance with sec. 4, chap. 3 of the so-called "Digest," which never was law. *27 Ark., 266.* Nor was it cured by act February 25th, 1873, because this did not take place until October, 1874, and the act only cured past acts.

The claim in this cause was never allowed or classified against the estate of Samuel Bender, and the Probate Court has no power to dispose of lands, except at public sale, to pay debts. *27 Ark., 335; Gantt's Dig., sec. 171.* There was no estate in course of administration, no administration, no representation, in the absense of which the court had no power to act. *36 Ark., 529.*

*Ratcliffe & Fletcher,* for Haynes and Helms.

The claim was presented to the administrator before August 15th, 1871, and under the chapters of Digest, ch. 4, secs. 5-6, David Bender had three years in which to present the claim to the courts.

The matters were in accordance with ch. 3, secs. 2, 3 and 4, chapters of the Digest. By act March 16th, 1871 (*Acts 1871, p. 18*), the Probate Court was clothed with original jurisdiction at law and *equity*. The court then had *plenary powers ;* all the parties acted in good faith, thinking their rights were settled, and all presumptions must be indulged in favor of the rightful exercise of the jurisdiction of the court. *19 Ark., 516; 44 id., 269; 33 id., 828.* A presentation to the administrator within two years, and the authentication of a copy, was all required by *Gould's Dig., ch. 4, sec. 102.* But these objections merely affect the regularity of the order, and do not render it void. *35 Ark., 210-11; 31 id., 83; 37 id., 159.* The order was an allowance of the claim.

An affidavit to a claim is not a *jurisdictional* prerequisite. *2 Eng., 78; 30 Ark., 759.* The preliminary matters may be waived by the administrator. *13 Ark., 276; 25 id., 219.* If Ben-

·der had proceeded in equity to enforce his lien, no question ·could have been raised on account of the absence of an affi-·davit. *25 Ark., 152; 29 id., 440; 32 id., 297; ib., 406; 28 id., 512.* It was as much the duty of the administrator to present the claim to the Probate Court as it was of the claimant. *29 Ark., 248.*

Under section 184, chapter 4, Gould's Digest, the court had power to dispose of the land as the interests of the estate demanded; the requirement of a public sale is not jurisdictional, and by section 181, the sale might be conducted as the ·court directed. The order was, in effect, a private sale to David Bender. *26 Ark., 431.*

But a failure to comply with the statute in this respect, is but an irregularity, and does not affect the jurisdiction or the validity of the order in a collateral proceeding. *13 Ark., 177; ib., 507; 19 id., 499; 44 id., 411; 31 id., 74.*

The order was an effectual allowance and adjudication of Bender's claim, fixed the status of the parties, and was in effect ·a sale of the land, or rather a canceling of the deed from David to Samuel Bender, and revesting the title in David, and a court ·of equity will treat that as done which should have been done. *1 Story Eq. Jur., sec. 640; 3 Wheat, 578; 10 Wall., 68; Willard Eq. Jur., 271.*

The relinquishment was simply the performance of a duty which a court of equity would have enforced. The order ·authorizing the relinquishment was a confirmation. Besides, the order of the Circuit Court, directing the deed to be spread upon the record, and taking the acknowledgment, was sufficient ·confirmation. *33 Ark., 294.*

There could be no homestead exemption against a claim ·for purchase money. *Coust. 1868, art. 12, sec. 3.* The heirs of ·Samuel Bender have no interest, unless there should have been ·a balance after payment of the claim. *22 Ark., 302.*

David Bender acted in good faith, relying upon the order, ·and all persons claiming subsequent to him will be subrogated

to his rights. *1 Story Eq. Jur.*, *secs. 567, 635, 638; 16 Ark., 216; 31 Ark., 411; 32 id., 346; 1 Jones Mortg., secs. 812, 874; Freeman Void Jud. Sales, sec. 51.*

The Douglass heirs having failed to redeem within two years from the death of their mother, are barred. *Burrows Tax., p. 362; 31 Ark., 364; 16 id., 612.*

If appellants are entitled to redeem, Haynes and Helms are entitled to the full value of all improvements, without deduction for rents. *Mansf. Dig., sec. 2651; 32 Ark., 131.* A bill in equity is the proper remedy. *41 Ark., 59.*

The statute of two years is applicable and can be success- fully pleaded against all defects, if any, in the sale. *22 Ark., 178; 21 id., 145; 20 id., 508; 7 Eng., 822; 46 id., 96.*

Under the act of 1857, minors had no longer time to redeem than others. Subsequent acts extended the time as a *matter of grace*, but there is nothing to affect the act of 1857. The purchaser was entitled to pay for improvements before the time for redemption expired. *Gould's Dig., ch. 148, sec. 143.* The words "after the expiration of the period allowed for redemption," in *secs. 2649* and *2651 Mansf. Dig.*, are interpolations by the digester taken from section 5792, as found in the act of 1883. It does not appear in *Gantt's Dig., secs. 2267–9*, although the act of 1871, page 186, and 1873, page 376, contained similar provisions.

Under all the statutes, a deed issues after two years from sale, and the title passes to the purchaser subject to be defeated by the exercise of the redemption by minors. *31 Kans., 310.* But a recovery by a minor is upon the same terms as an adult, the difference being that an adult must show a fatal defect in the sale, while a minor need only show disability. *21 Ark., 319.*

The betterment act is not in conflict with the act of 1857. The two acts when applied to the objects which the Legislature had in view, work in perfect harmony, and fall clearly

within the rule in *44 Ark., 410; 10 Ark., 588; 23 id., 304; 41 id., 149.*

COCKRILL, C. J.  The complaint in this cause was filed for the purpose of effecting a redemption of the lands described therein from tax sales. It alleged that the plaintiffs, Julia and Adelia Bender, Sallie Morris and Maggie Vanlandingham, together with Walter and David Bender and Agnes Douglas, were tenants in common and owners of the lands when they were forfeited for the non-payment of taxes ; that the four first named were the minor children and heirs of Samuel Bender, deceased, who died seized of the lands, and that the others were the heirs-at-law of Agnes Douglas, who was daughter to Samuel Bender and who died after the forfeitures ; that each of the defendants, Bean, Helms and Haynes held part of the lands by virtue of donation deeds from the State, executed in pursuance of forfeitures for the non-payment of taxes ; that they had made a tender to each of the amount required by law to redeem, and that the tenders had been refused.

The prayer was for an account of rents and for the enforcement of their right to redeem. Haynes and Helms filed a joint answer admitting that they held under donation deeds, but denying that the plaintiffs were ever the owners of the lands, and alleged that they had paid taxes and put valuable improvements upon them.

Bean denied that he held under a tax deed ; admitted that the lands in question had once belonged to Samuel Bender, the plaintiff's ancestor, and that he had died seized and possessed thereof, but alleged that the administrator of his estate, acting under authority of the Probate Court of his appointment, conveyed the same to one David Bender before the forfeiture mentioned in the complaint, and that he had succeeded to David Bender's title through certain mesne conveyances ; he pleaded the seven-year statute of limitations; alleged that the tax titles of Haynes and Helms were irregular and void ;

·made his answer a cross-complaint against them and the plaintiffs aud prayed that his title be quieted against the claims of title of all the parties.

Proof was taken and the court heard the cause without objection from any source as to multifariousness or misjoinder of parties, and decreed that Bean had no title except as against the Douglass heirs; that the minor children of Samuel Bender were entitled to recover four-sevenths of the lands which he held; that they were entitled to redeem the same proportion of the lands held by Haynes and Helms, on paying the excess of the amount of taxes paid, and the value of improvements made by the tax-purchasers over the value of the rents enjoyed by them, and dismissed the complaint as to the heirs of Agnes Douglass. The plaintiffs appealed, and afterwards cross-appeals were allowed here in favor of each of the other parties.

Bean argues that he succeeded to the title of Samuel Bender, by virtue of the administrator's deed, and that the decree granting the plaintiffs relief against him is wrong for that reason. Haynes and Helms also argue that the administrator's deed divested the title of the plaintiffs before the forfeiture, and left them without interest to redeem; and say if they are mistaken in that, that the court erred in refusing to allow them credit for the full amount of their tax expenses and the value of the improvements, without diminution for rents enjoyed by them.

The successful plaintiffs complain because they are required to pay for any part of the improvements, and the other plaintiffs appeal because no relief was granted them.

The facts in relation to the execution of the deed by Bender's administratior, are as follows. In 1860 Samuel Bender purchased the lands in dispute from David Bender, who, as all the parties admit, was then the owner in fee, making a cash payment and giving his notes for $2000 for the deferred payments of the purchase money. A lien was retained in the deed as se-

curity for the payment of the unpaid purchase money. Samuel Bender died in January, 1869. In March of the same year, Walter Bender was appointed administrator of his estate, and in August, 1871, presented his petition to the Probate Court. of his appointment, alleging that the notes for the purchase money were unpaid, and that the lands were worth less than the principal and interest due on them ; that the estate was insolvent, and that he was unable to discharge the notes if it was to the interest of the estate to do so; and prayed that authority be granted him to relinquish to David Bender all the interest of the estate in the lands, upon condition that he would surrender the purchase money notes to the petitioner.

The order of the Probate Court in this connection is as. follows :   " Upon examination it is considered and ordered by the court that the prayer of said petition be granted, and. he (the administrator) is hereby authorized to make said relinquishment."

The records of the administration of the estate of Samuel Bender were put in evidence. and it nowhere appears that the claim of David Bender against the estate of Samuel, was ever allowed by the court or presented to the administrator. In June, 1872, the accounts of Bender's administrator were examined and approved, and the administrator was discharged. In October, 1874, a deed of relinquishment was executed by Walter Bender, purporting to act as administrator of the estate of Samuel Bender, deceased, to David Bender, to carry out the order of August, 1871, in reference to the settlement of the purchase-money notes. The deed was acknowledged by Walter Bender before the Probate Court, and was spread at. large upon the record ; no order in reference to the matter was made by the Court. David Bender appeared at the time the deed was acknowledged, and surrendered the purchase-money notes. No other action was had in the matter of the estate after the discharge of Walter Bender as administrator in.

Bender v. Bean.

1873. The lands were assessed for taxation in the name of David Bender after 1874. He conveyed them to one Allen, and Allen to the defendant, Bean. Bean and those through whom he claimed title, had been in the adverse possession for more than seven years when the suit was instituted.

1. ADMINIS-
TRATION:
Relin-
quishment
of land to
vendor of
decedent:
"CHAPTERS
OF DIGEST."

Such is Bean's title. The order of the Probate Court, of August, 1871, was evidently made in pursuance of the supposed authority of the fourth section, of chapter 3, of the so-called "Chapters of the Digest," which was to the effect that where lands of a decedent had not been paid for, the court might, if it believed it advantageous to the estate, "order the same to be relinquished" to the vendor on the most advantageous terms that could be agreed upon. But the "Chapters of the Digest" did not receive legislative sanction in legal form and the provision referred never became a law. *Vincent v. Knox, 27 Ark., 267.*

In 1873 the Legislature enacted that all sales previously made in pursuance of the "Chapters of the Digest" should be binding (*Acts of 1873, p. 13*), but this act could add nothing to the validity of the order of August, 1871, because it was not in itself a sale, but purported only to confer authority upon the administrator to sell, and the power had not been executed when the healing act was passed. If the order rested upon the supposed authority of the "Chapters of the Digest," it was a nullity, and no rights could be acquired under it.

2. SAME:
Same.

But it is argued that under the act of March 16, 1871, which was in force when the order was made, the Probate Court was clothed with all necessary jurisdiction at law and in equity, to do what was necessary to close up the administration of estates (*Acts of 1871, p. 18*), and that being a superior court and having jurisdiction of the subject matter, the order is valid. But the order does not profess to divest the title of the estate and vest it in David Bender, as counsel argue. And, if it be admitted that the Probate Court had authority to do that, it could not have been effected upon the *ex parte* petition of the adminis-

trator. The order was not binding on David Bender. His assent to the condition upon which the conveyance was to be made, that is, the surrender of the notes which he held, was necessary to give it effect. But his assent was not obtained, and no effort was made to execute the order until the administrator had been shorn of his authority to act by the court's order of removal. What he did after removal was no more than the act of a stranger. The administration had ceased, the heirs had the right to the possession of the land (*Stewart v. Smiley, 46 Ark., 373*), and the court had lost its jurisdiction over it. An order confirming the execution of the previous power to sell under such circumstances could not have breathed life into the deed. It would have been an *ex parte* judgment with no party in interest before the court, and no cause pending. See *Phelps v. Buck, 40 Ark., 219; Sumner v. Howard, 33 ib., 490; Gwynn v. McCauley, 32 Ark., 97.* There was no error in declaring Bean's claim of title without foundation.

The plaintiffs who recovered against Bean were minors when their cause of action accrued, and when the suit was brought, and the statute of limitations did not operate as a bar against them. But the minority of the heirs of Agnes Douglass is no protection to them, because the statute was set in motion in the lifetime of their mother. It follows that the plaintiffs in whose favor the decree was rendered were owners of the land when they were forfeited to the State for the non-payment of taxes, and as they were within the age when their suit was begun, their right to redeem was intact and could be enforced in equity. *Carroll v. Johnson, 41 Ark., 59; Keith v. Freeman, 43 ib., 296.* The question is, what must an infant pay to redeem, or what is the tax-purchaser entitled to receive as the price of redemption? The answer, so far at least as the purchaser is concerned, depends upon the law in force when the rights of the parties accrued. *Railway v. Alexander, 49 Ark. 190.*

3. STATUTE OF LIMITATIONS: When infants barred.

4. TAX SALES: Minor's right of redemption: Compensation for improvements.

One of the tax deeds is based upon a sale made in 1876, and the other in 1877. The lands were certified to the State Land Commissioner, and donation certificates were issued by him to the present claimants in 1879, and were followed by deeds in due course of time. The privilege of redemption was extended to minors by the revenue act of 1873 (*Gantt's Dig.*, *sec. 5197*), and has remained unchanged. By the seventeenth section of the amendment to the revenue law enacted March 5, 1875, any person desiring to redeem lands sold for non-payment of taxes could do so within the time limited by law, by paying "an amount of money equal to the taxes for which the land was sold, penalty and cost of advertising; and the taxes subsequently paid thereon by such purchaser, or those claiming under him, together with interest at the rate of ten per cent. per annum, on the whole amount so paid and the amount paid by the purchaser for the certificate of purchase, and the expenses of advertising." *Acts of 1875, p. 227.*

5. SAME: Same.

While this section applies to redemption by minors (*Keith v. Freeman, sup.*), the reference to payment for a certificate of purchase without mentioning the deed shows that the Legislature had in view more particularly a redemption within two years from the sale and before a deed issued. Nothing is said therefore in this section about improvements. But in section 186 of the same act (*Gantt's Dig., sec. 5216*), it was declared that no compensation should be allowed for improvements made within two years of the sale, but that for "improvements made after two years from the date of sale (such) proceedings shall (should) be had in relation thereto as shall be prescribed in any law existing at the time of such proceedings for the relief of occupying claimants of land." This law was in force when the forfeitures were had. It was then, a condition upon which the right to redeem was granted to the minors, that the Legislature might regulate the compensation to be paid by them for improvements thereafter placed on their land by the tax-purchaser. The amount of the taxes, penalties, and the rate of interest

the purchaser was to receive were unalterably fixed by the terms of the implied contract made at the date of his purchase. These are regulated as we have seen by the act of 1875 above quoted. The law for the relief of occupying tax claimants of land in force when the suit was instituted, was the 155th section of the revenue act of 1883 (*Mansf. Dig., sec. 5792*), which provides that they shall be allowed the full cash value for improvements made after two years from the date of sale. The law was passed subsequent to the "betterment act" and gives to the claimant the right to compensation without the showing of belief in the integrity of his title, which is demanded by the latter act. Being the last expression of the Legislative will and applicable especially to tax claimants it prevails in this suit. The court followed the correct rule in allowing the tax-purchasers the value of the improvements made by them.

But upon what principle can they be charged with the value of the rents? Upon the execution of the tax deeds they became the owners of the lands. *Craig v. Flanagin, 21 Ark. 319.* The minor's right to redeem is not an estate in the lands, but only a statutory privilege to defeat the purchaser's title within a limited time. That was the effect of the ruling in *Craig v. Flanagin, sup.*, where the right to redeem by a non-resident—a privilege granted by a previous law—was considered. The right is analogous to a condition subsequent attached to an estate, and it was only by virtue of the statutory recognition of the minor's vendee that we were able to rule that the privilege was not strictly personal. *Neil v. Rozier, 49 Ark., 551; Mansf. Dig., sec. 4272.*

6. SAME: Minor's right to redeem, not an estate: Rents.

The plaintiff's suit to redeem was an affirmance of the validity of the tax titles and an election to defeat them by complying with the law governing such cases. It is true allegations of irregularities in the tax proceedings were made in the complaint, but the proof does not sustain them.

The court erred, therefore, in charging Haynes and Helms with rents. As to them the decree will be reversed and the

LII.—10.

cause remanded with instructions to enter a decree in accordance with the opinion.

Otherwise the decree is affirmed.

SUPPLEMENTAL OPINION ON MOTION TO MODIFY DECREE AS TO RENTS.

HEMINGWAY, J.   Upon the hearing of this cause, we held that defendants Haynes and Helms were not chargeable with rents of land purchased by them at tax sale.

The plaintiffs, who prevailed, have filed a motion seeking to modify the decree in this respect, and to charge Haynes and Helms with rents after they offered to redeem and made a tender of the sum necessary.

7. SAME: Same: Tender of payment: Offer to redeem.   As we said upon the hearing of this cause, the minor's right to redeem is a statutory privilege to defeat the purchaser's title within a limited time.   The purchaser holds an estate in fee, subject to be defeated by the exercise of the privilege.   This the minor may do by making the payment prescribed by the statute, within the statutory period, to the purchaser.   Upon such payment, the fee of the purchaser is terminated, and the person redeeming becomes seized thereof with all rights pertaining thereto, including the right to rents.

A tender of the amount necessary to redeem is as effective as a payment thereof; and an offer, made in good faith, to redeem, which is refused, not because no tender, or an insufficient tender, is made, but because the right to redeem is denied, is equally effective.

Any other rule would make a profit for the purchaser, from his unlawful denial of a statutory right.

A tender of the exact amount necessary, under a statute which exacts payment for improvements, would in many cases be impracticable   If the purchaser could decline it without making a showing as to the correct amount, and still enjoy the rents and profits of the land, redemption by minors would be difficult and tedious.   In all cases where the rents and profits for a few years exceeded the cost of litigation, redemption

would be allowed only at the end of vexatious suits. When the former owner, who is entitled, desires, and in good faith attempts, to redeem, the tax-purchaser should offer no obstacles to his doing so. If the sum offered is inadequate, the inadequacy should be objected to, and the correct amount indicated. It will not do to maintain silence as to objections, which if expressed, might be met, and afterwards assert them to the owner's prejudice.

The plaintiffs made a tender before bringing the suit, but it was joined with a tender from another party who was not entitled to redeem. This was not a good tender.

In the bill filed, they set out their respective interests, and ask to be allowed to redeem as provided by law. This implied an offer to pay the amounts which the law allowed to each of the tax-purchasers. It was met by no objection to its terms, or to the fact that no money was actually tendered, but by a denial of the right to redeem and by the assertion of a title adverse to the plaintiffs. They desired to redeem and sought to terminate the estate of the tax-purchasers, which they had a right to do; the purchasers could not by their improper refusal of the privilege sought, extend the term of their estate, and continue to enjoy its rents and profits.

The decree will be modified, and Haynes and Helms will be charged with rents from the date of the institution of the suit.

DISSENTING OPINION BY SANDELS, J. On motion to modify decree.

I do not assent to the conclusion of the court upon the motion of plaintiffs below to award them the rents of the lands in controversy, since the filing of their bill. I do not think they are entitled to rents until after the decree of the court has adjudged them entitled to redeem, and they have paid the sums adjudged against them.

So much of the record as is necessary to a proper understanding of my position, is as follows:

There were seven heirs of Bender. *Two* were confessedly barred of their right to redeem. *Five* of them claimed the right, and sent their attorney to Haynes and Helms to effect the redemption. He offered to each of them (Haynes and Helms) $100 to cover taxes, penalty, costs, etc, on behalf of the "Bender heirs." Each refused to accept the sum tendered without assigning any reason for the refusal.

*Five* of the Bender heirs, soon after, filed their bill to redeem, and, after alleging the tender of $100 to each of the defendants, offered to pay such sums as the court might adjudge against them for the redemption of five-sevenths of the land. By the consideration of this court it was determined that *one* of the *five* plaintiffs was not entitled to redeem, and that only four-sevenths of the land was redeemable. It was determined, also, that the sum due to Haynes was $      , and to Helms $      . The sum tendered before the filing of the bill was for the redemption of more land than they were entitled to redeem, and was insufficient to pay for the redemption of *that* to which they were entitled. It is conceded by the court that this tender was ineffectual for any purpose. It is decided, however, that by the subsequent filing of the bill by *five* heirs claiming five-sevenths of the land, and offering to pay such sums as the court might adjudge; and, also, by the filing of the answer denying the right of these plaintiffs to redeem; but insisting that if they were so entitled, the sum tendered them was inadequate, the right of plaintiffs to the rents accrued.

For a long time *the right to maintain* a bill to redeem without a previous sufficient tender was denied, except when the fraud of the tax-purchaser or officer had prevented redemption within the proper time, or when the bill presented other features that brought the case within some distinct head of equity jurisprudence. But the last, as also the greatest innovation, in favor of liberal dealing with delinquent tax-payers, is that they may preserve their *right of redemption*, by filing a bill without

tender at all, where it is difficult to tell what exact sum should be tendered. This saves *the right to redeem* when the bil offers to pay such sums as are adjudged. But I maintain that the right to redeem does not necessarily carry with it the right to rents. The right to rents depends upon the ownership of the lands.

In cases of redemption, by persons generally, within two years from the sale, the tax-purchaser has only an inchoate right to the land, and is not entitled to possession. He is a trespasser if he takes it. He gets *title* upon the execution of a deed to him at the expiration of two years. This title is unqualified, except in cases where the delinquent tax-payer is a minor. In that event the tax-purchaser takes the title subject to divestiture by the exercise of the minor's right of redemption within the statutory period.

From the time of the execution of the tax deed, then, the tax-purchaser's title is indefeasible except upon the contingencies above stated : the minor paying or tendering the full amount of taxes, penalty, costs, etc. If the sum be tendered before, or at the filing of the bill, the minor upon recovery in the action is entitled to the rents and profits from the time a sufficient tender was made and refused. Why ? Because the payment, or the tender, of the full sum due the tax-purchaser operated to divest his title, and from that time he holds wrongfully the *plaintiff's* land.

But in case the plaintiff offers, generally, to do what the court may adjudge proper, there is no divestiture of the title of the tax-purchaser until the court adjudges the plaintiff's right to redeem, fixes the amount of plaintiff's liability, and the plaintiff pays it. The plaintiff may never pay it, in which case there would never be a divestiture. Until such adjudication and payment, the land remains the property of the tax-purchaser, and he is not chargeable with rents for living on his own place.