## COOK *v.* BAGNELL TIMBER COMPANY.

### Opinion delivered February 17, 1906.

1. RESCISSION OF CONTRACT—DRUNKENNESS.—In equity, as well as at law, in the absence of fraud or imposition, it is only when one is so completely intoxicated as to be incapable of knowing what he is doing, or of understanding the consequences of his acts, that his contracts, entered into while in that state, are thereby rendered void.   (Page 51.)

2. APPEAL—OBJECTION NOT RAISED BELOW.—Where plaintiff in the court below treated defendant's answer as tendering a certain issue, and the cause was tried on that theory without objection to the sufficiency of the answer, plaintiff will not be heard, on appeal, to say that no such issue was tendered.   (Page 53.)

3. FRAUD—INADEQUACY OR EXCESSIVENESS OF CONSIDERATION.—While the inadequacy or excessiveness of consideration of a contract may be a circumstance tending to establish the perpetration of a fraud, it does not, of itself, when good faith is affirmatively shown, constitute such a fraud or imposition as will afford grounds for setting aside the contract.   (Page 54.)

4. CONTRACT—DEALING WITH SOBER OR INTOXICATED PERSON.—One who deals with a sober man upon equal footing owes him only the duty not to mislead him to his prejudice by a material false representation concerning the subject-matter, or by a failure to disclose a material fact within his knowledge which the circumstances make it his duty to disclose; but one who deals with a person whom he knows to be partially intoxicated owes him the further duty not to take advantage of his condition by knowingly imposing a harsh contract upon him (Page 54.)

Appeal from Cross Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

This is a suit in equity brought by the Bagnell Timber Company against J. M. Cook and R. N. Cook to cancel and rescind a written contract for the sale of timber by defendants to the

plaintiff, and to recover the price of the timber paid to the defendants.

The defendants kept a saloon and grocery store at Fair Oaks in Cross County, and owned a tract of land, containing 411.72 acres, situated about two miles distant from their place of business.

The plaintiff is a foreign corporation, doing business in Arkansas through its agent, Mr. Richard Jackson, of Paragould.

On September 5, 1902, one Morris Powers, who had been making railroad ties for plaintiff, negotiated with defendants for the purchase of all the oak timber on the land, and agreed to pay the defendants $400 for same. This occurred in defendants' saloon and store at Fair Oaks. On the same day Powers and one of the defendants went to the office of an attorney in Wynne, and procured the preparation of a written contract for the sale of the timber in accordance with the verbal agreement made earlier in the day. A copy of the contract was forwarded by mail to Mr. Jackson with a letter written for Powers by the attorney, instructing Jackson to send the money to the Cross County Bank at Wynne, to be paid over to the Cooks when the contract should be properly signed. Jackson, on receipt of the letter and copy of the contract, addressed the following letter to the defendants:

"Paragould, Ark. Sept. 6, 1902.

"J. M. & R. N. Cook, Fair Oaks, Ark:

"Gentlemen—I have a letter from Morris Powers, of Hamlin, saying he had bought 411.72 acres of timber from you for $400, with a copy of contract enclosed. I hand you the copy of the contract, and, if it is all right, you can notify me. I will send check on the receipt of your advice that it is all right with you; I will also write to Mr. Powers by today's mail to the same effect. The letter from Mr. Powers was written by Mr. Patterson, of Wynne, which says, 'Send to the bank.' There is no use of this. Send to me. You can write or wire me that it is all right, and the check will be sent."

On September 8th defendants replied by telegraph to this letter as follows:

"Your letter received today. Everything O. K. You can send check.

[Signed]                              "J. M. & R. N. COOK."

Thereupon Jackson sent check for $400 to defendants, and they executed and delivered to him the contract conveying the timber on the land to plaintiff. Shortly afterwards plaintiff discovered that the timber on the land was of little value, demanded a rescission of the contract, and offered to reconvey the timber to defendants. Upon refusal of defendants to rescind the contract and to refund the money, this suit was brought to compel the rescission.

In the complaint it is alleged that the timber on the land is of no value, and that defendants were well aware of that fact when they sold it to Powers; that Powers was intoxicated at the time, and did not know what he was doing, and that defendants induced him, while intoxicated, to purchase the timber. It is also alleged that Jackson had no knowledge or information as to the value of the timber, and relied solely upon the assurance contained in defendants' telegram as to the value of the timber.

The defendants in their answer denied all the allegations of fraud or misconduct in the sale, or that they knew the value of the timber at the time of the sale, or had any better means of information than plaintiff as to its value. They alleged that the contract was fairly entered into, and that the timber was worth the price paid.

The court rendered a decree in favor of the plaintiff for rescission of the contract, and the defendant appealed.

*J. T. Patterson* and *Murphy & Lewis,* for appellants.

1. No construction can be placed on appellants' telegram save willingness to enter into the contract of sale. Having equal opportunity with appellants to ascertain the amount and value of the timber, appellee had no right to rely on their statements, if any had been made. 1 Ark. 31; 26 Ark. 28; 11 Ark. 58; 7 Ark. 166; 84 S. W. 1036.

2. The drunkenness must be excessive, such as to suspend the reason and create impotence of mind, in order to enable a party to avoid his contract. 5 Mo. App. 457; 60 Ark. 610; 14 Cyc. 1103; 35 Conn. 170; 72 Ill. 108. The evidence does not show such inadequacy of price as to raise any presumption of fraud. The sale should stand. 84 S. W. 1036, 1037; 11 Ark. 58; 71 Ark. 309.

*J. D. Block,* for appellee; *F. H. Sullivan,* of counsel.

A contract may be void, (1) for intoxication alone where it is such as temporarily to dethrone the reason, (2) where it is of a lesser degree if it is induced or procured by the other party to the transaction, and (3) where the bargain is an unfair one. 60 Ark. 610; 14 Cyc. 1105; 17 Am: & Eng. Enc. Law (2 Ed.), 403; 54 L. R. A. 440, note. Under the latter conditions, inadequacy of consideration is evidence of fraud. 1 N. J. Eq. 357; 2 Head (Tenn.), 297; 1 Biss. 128. Concealment by one party of material facts of which he knows the other is ignorant constitutes fraud. 7 Ark. 166; 14 Ark. 21; 30 Ark. 230; 35 Ark. 483; 38 Ark. 334.

The chancellor's findings of fact will not be disturbed unless the evidence is clearly against it. 68 Ark. 134; 71 Ark. 605.

McCULLOCH, J., (after stating the facts.) Appellee's assertion of the right to a rescission of the contract is based upon two grounds, viz: The alleged intoxicated condition of Powers when he negotiated the contract with appellants, and the failure of appellants to disclose information as to the true value of the timber in response to the letter written them by Mr. Jackson. The latter grounds may be disposed of by saying that the letter of Jackson can not be construed as a request for information as to the value of the timber, nor as an expression of reliance upon the judgment of appellants as to the value. "I hand you a copy of the contract," the letter stated, "and if it is all right you can notify me. I will send check on receipt of your advice that it is all right with you." There is nothing in this to have put appellants upon notice that they were expected to inform the writer of the value or quantity of timber bargained for. On the contrary, they had a right to presume that Jackson was relying upon the judgment of Powers, who was an experienced timber man, and was engaged in the business of making railroad ties for appellee in that locality. Nor can a warranty of the quantity of the timber be implied from the circumstances under which the bargain was negotiated and consummated. The tract of timber land was open to the inspection of either party alike, and the undisputed testimony shows that appellants had owned the land scarcely a month, had never inspected it, and had no information as to the quantity of timber except that there were about 35 acres of the tract cleared and in cultivation. The parties were dealing with each

other upon equal footing, and mere inadequacy of the considera-
tion, however gross, will not avoid the contract.

The controlling principles as to the right to rescind a con-
tract because of intoxication are fully stated by this court in the
case of *Taylor* v. *Purcell,* 60 Ark. 606. "It is only when one is
so completely intoxicated as to be incapable of knowing what he
is doing," said the court, "or of understanding the consequences
of his acts, that his contracts, entered into while in that state, are
thereby rendered void. 2 Kent, Com. 451; *Gore* v. *Gibson,* 13
Mees. & W. 623; *Bates* v. *Ball,* 72 Ill. 108; *Schramm* v. *O'Conner,*
98 Ill. 541; *Johns* v. *Fritchey,* 39 Md. 258. Where the defense
is that the contract or note was procured through fraud, the court
or jury trying the case may take into consideration, along with ·
the other surrounding circumstances, the condition of the con-
tracting parties at the time of making the contract, whether either
of them was to any extent under the influence of intoxicating
drink, in order to determine whether the contract was procured
through fraud or not. But, in the absence of fraud, the intoxi-
cation to invalidate a contract must be such as to temporarily
dethrone reason and judgment."

The case in which this doctrine is announced was an action
at law to recover upon a contract where the defendant pleaded
intoxication as a defense, but no different rule prevails in equity
where suit is brought to rescind the contract. 14 Cyc. p. 1106;
2 Pom. Eq. Jur. § 949; 1 Story, Eq. Jur. § 231; *Rodman* v. *Zilley,*
1 N. J. E. 320; *Maxwell* v. *Pittenger,* 3 N. J. E. 156;
*Keough* v. *Foreman,* 33 La. Ann. 1434; *Caulkins* v. *Fry,* 35 Conn.
170; *Cavender* v. *Waddingham,* 5 Mo. App. 457.

Judge Story states the rule thus: "But, to set aside any act
or contract on account of drunkenness, it is not sufficient that the
party is under undue excitement from liquor. It must rise to that
degree which may be called excessive drunkenness, where the
party is utterly deprived of the use of his reason and understand-
ing; for in such a case there can, in no just sense, be said to be a
serious and deliberate consent on his part, and without this no
contract or other act can or ought to be binding by the law of
nature. If there be not that degree of excessive drunkenness,
then courts of equity will not interfere at all unless there has been
some contrivance or management to draw the party into drink,

or some unfair advantage taken of his intoxication to obtain an unreasonable bargain or benefit from him." 1 Story, Eq. Jur. § 231.

The evidence in this case does not establish intoxication on the part of Powers to the extent that he was incapable of knowing what he was doing or of understanding the consequences of his acts. At most, it shows only that he was under the influence of liquor to such extent as to materially affect his judgment.

It is true, Powers says in his deposition, "I could not have known what I was doing;" but he does proceed to relate many of the details of the negotiations between himself and Cook, as well as some of the incidents of the meeting in the office of the attorney in Wynne when the contract was prepared, and he states that Cook first proposed to accept $2.00 per acre for the timber, which offer he (Powers) declined and offered to give $1.00 per acre. Both of the Cooks testify that he was not excessively drunk when he made the trade.

There is no proof at all that Powers' state of intoxication was induced by appellants, or that any advantage was sought or taken of his condition except that they made a bargain with him which subsequently developed to be a disadvantageous one for the purchaser of the timber. This, however, was through no fault or connivance of appellants, so far as the testimony discloses. As we have already stated, appellant had owned the land only about a month, and had no information concerning the quantity of timber thereon. They were wholly without experience in the timber business, whilst Powers was an experienced timber man, was then engaged in working timber into ties in that locality, and appellants had reason to believe that he had recently estimated the timber on this land. It is not claimed that they made any representations to Powers or any one else concerning the quantity or quality of timber on the land—the record is utterly void of any evidence of such representation, either directly or by inference. Nor is there anything in the attitude of the parties toward each other which called for a statement from one to the other as to knowledge concerning the quantity of timber. It is clearly a case where both parties "guessed at" the quantity of timber on about 375 acres of timber land without inspecting it, and the party who was worsted in the bargain is without remedy for relief

against its hardship. Doubtless, Mr. Jackson was under the belief that Powers had inspected and estimated the timber, and relied upon his (Powers') judgment as to its quantity and value, but that is his misfortune. Appellants were without fault, so far as the proof discloses, and they can not be held responsible because Powers failed in his duty, nor can their bargain be annulled on that account, however improvident and burdensome to appellee it may appear to be.

We are therefore of the opinion that the learned chancellor was wrong in his conclusion, and that his decree annulling the contract must be reversed, with directions to dismiss the complaint for want of equity. It is so ordered.

ON REHEARING.

Opinion delivered April 30, 1906.

McCULLOCH, J. We are asked to grant a rehearing and affirm the decree on two grounds: First, that the answer does not put in issue the question of Powers' total intoxication; and, second, that, a state of partial intoxication being established by the evidence, gross excessiveness of price paid for the timber is sufficient to avoid the contract of sale.

On the first-named proposition, it is sufficient to say that the plaintiff accepted the answer as tendering an issue as to the degree of Powers' intoxication, and proceeded to introduce proof on the subject. It is true that the answer contained no express denial of the allegation in the complaint that Powers was totally intoxicated and wholly incapacitated from making a contract; but, unless that allegation be treated as denied, no defense at all was tendered by the answer. The plaintiff treated that issue as properly tendered, tried the case on that theory without objection to the sufficiency of the answer, and can not now be heard to say that the answer tendered no defense.

It is contended that the grossly excessive price which Powers agreed to pay for the timber was sufficient to avoid the contract and justify the chancery court in setting it aside.

Continuing the quotation from Story in the section referred to in the original opinion, it is said:

"For, in general, courts of equity, as a matter of public policy, do not incline on the one hand to lend their assistance to a person who has obtained an agreement or deed from another in a state of intoxication; and, on the other hand, they are equally unwilling to assist the intoxicated party to get rid of his agreement or deed merely on the ground of his intoxication at the time. They will leave the parties to their ordinary remedies at law, unless there is some fraudulent contrivance or some imposition practised." 1 Story, Eq. Jur. § 231.

The rule deducible from this statement, and from all the authorities, is that the contract of a person partially intoxicated at the time will not be set aside because of his intoxication. That condition results from his own act, and entitles him to no consideration whatever in either a court of law or of equity. It is not because of his intoxication that courts will annul the contract, but because of some fraud or imposition perpetrated by the person who takes advantage of his condition to make a contract with him. The courts merely grant relief from the fraud or imposition perpetrated. Therefore, while the inadequacy or excessiveness of the consideration for the contract may be a circumstance tending to establish the perpetration of a fraud, it does not, of itself, when good faith is affirmatively shown, constitute such a fraud or imposition as will afford grounds for setting aside a contract. *Birdsong* v. *Birdsong*, 2 Head (Tenn.), 290.

This view, it is argued, puts a partially intoxicated person upon precisely the same plane as a perfectly sober man, with reference to his right to avoid a contract. Not so. One who deals with a sober man upon equal footing owes him only the duty not to mislead him to his prejudice by a material false representation concerning the subject-matter, or by a failure to disclose a material fact within his knowledge which the circumstances may make it his duty to disclose, whereas one who deals with a person whom he knows to be partially intoxicated owes him the duty not to take advantage of his condition by knowingly imposing a harsh contract upon him.

In either case equity will give relief from a contract induced by material false representations which were relied upon, or by

failure to disclose material facts when peculiar circumstances existed which called for such disclosure; but only in the case of the drunken man will knowledge of the drunkenness, coupled with knowledge of the harshness or improvidence of the contract, be deemed such a fraud or imposition as affords ground for relief.

Rehearing denied.

WOOD and RIDDICK, JJ., dissent.

