RICH, EXECUTOR *v.* ROSENTHAL.

5-397, 5-445 (Consolidated)                    268 S. W. 2d 884

Opinion delivered June 7, 1954.

*Joseph Morrison,* for appellant.

*Virgil Roach Moncrief, John W. Moncrief* and *W. A. Leach,* for appellee.

ROBINSON, J.   Herbert M. Lindsey owned a lot in the city of Stuttgart on which is situated a two-story building.   The upper story of the building consists of rooms and apartments; Lindsey lived there.   The lower floor was rented to Joe Rosenthal who operates a store.   On June 28, 1947, Lindsey and Rosenthal entered into a written lease contract whereby for the consideration of $100 per month payable in advance on the first day of each month during the term of the lease, the lower floor of the building was leased to Rosenthal for a period of five

years, with the option of extending the lease for two additional five year periods. The written contract also gave Rosenthal the option of purchasing the property upon the death of Lindsey for the price of $12,000 in cash. The contract further provides: "It is further agreed and understood that in the event the option to purchase as herein contained shall be exercised by the said Lessee, then the said Lessor binds himself to furnish a complete abstract of title showing in him a good merchantable title." The option to purchase could be exercised at any time during the period of the lease or any extension thereof, provided Lindsey died during such time.

On July 18, 1948, Lindsey mortgaged the property to C. S. Rich to secure a loan of $3,000 and interest. This mortgage was placed of record prior to the time the lease contract containing the option to purchase was recorded. On September 9, 1948, Lindsey executed a will; Item 6 thereof leaves to Miss Odie Smith a life estate in the top floor of the two-story building in question. Paragraph A of Item 8 of the will provides that Joe Rosenthal shall be permitted to occupy the lower floor of the building so long as he pays not less than $75 per month rent. Paragraph B of Item 8 provides: "The aforesaid Miss Odie Smith, so long as the aforesaid Joe Rosen [Rosenthal] shall occupy the lower floor of the business house on Main Street as tenant the aforesaid Miss Odie Smith, shall be permitted to occupy the upper story of said business, on the further condition that she will keep the interior thereof in a reasonably good state of repair."

Lindsey died December 14, 1950, which was within the original lease period. On December 20, 1950, C. M. Rich was appointed executor of Lindsey's estate. Lindsey's will was filed for probate. A half brother and some cousins survive him. Rosenthal decided to exercise his option to purchase the property, but his attorney entertained considerable doubt as to whom the $12,000 purchase price should be paid. Also there was a question of whether the continuation of payments of rent would constitute a waiver of the option to purchase.

Rosenthal's attorney talked the matter over with the attorney for Rich, the executor, and on January 2 wrote to him as follows:

"On June 28th, 1947 Herbert M. Lindsey and Joe Rosenthal entered a lease contract, which lease contract contained an option giving the said Joe Rosenthal the right to purchase the following described real property to-wit:

The South Half of Lot Four in Block *sic*
of Bordfeldt's Addition to the City of
Stuttgart

upon the death of the said Lindsey at and for the sum and price of $12,000 in cash.

"The said Herbert Lindsey is now dead and the said Joe Rosenthal desires to exercise his option and is now ready, willing to pay the full purchase price in cash and to deposit the cash with any responsible person that may be agreed upon to be delivered over to the person or persons entitled to receive the same when the transaction is ready to be closed.

"The Probate Court records show that the said Herbert M. Lindsey died testate; that his last will and testament has been duly admitted to probate and that Clarence Rich is now the duly appointed, qualified and acting Executor of said will and said estate.

"Knowing that you are the attorney for the Executor and the estate, this letter is addressed to you to the end and that the matter of closing up the transaction may proceed as rapidly as possible."

On January 4, the attorney for the executor replied to the attorney for Rosenthal as follows:

"Replying to your letter of January 2, relative to purported contract between Herbert M. Lindsey and Mr. Joe Rosenthal concerning the South Half of Lot 4, Block 6, Bordfeldt's Addition to the City of Stuttgart.

"I have conferred with Mr. Rich, the Executor, and he advises that he does not have sufficient knowledge or

information at this time to know whether or not the purported contract is valid or not and, therefore, must await judicial determination thereof.

"He directs that Mr. Rosenthal's attention be called to the clause in the will which specifically provides that Mr. Rosenthal is to have preference as a tenant of the downstairs so long as he pays the rent promptly and keeps the interior in good repair. Neither Mr. Rosenthal nor the tenant of the upper story are permitted to sublet without written permission of the Executor or Trustee.

"The Executor further advises that if Mr. Rosenthal desires to he may deposit his rent in the bank as was done before, but insists that this rent be paid promptly until such a time as the validity of the contract can be determined. Mr. Rich also advises he could find no record of a payment of the December rent. The January rent is now due."

On January 5, Rosenthal's attorney replied to Rich's attorney:

"On June 28, 1947 Herbert M. Lindsey and Joe Rosenthal entered into a lease contract covering the store building now occupied by the said Rosenthal. This lease was for a term of years not yet expired.

"Under the terms of the contract Mr. Rosenthal was to pay rent at the rate of $100 per month, due and payable on the 1st day of each month. The rent due December 1, 1950 has been paid.

"In this lease contract was an option to purchase the building for $12,000 upon the death of said Lindsey, notice of his intention to exercise this option has been given.

"Mr. Rosenthal has no objection to continuing the payment of such during the pendency of any proceeding to determine the validity of his option to purchase provided such payment shall not be considered as a waiver of the claimed option, so I am tendering a check for $100 in payment of the January rent with the understanding that the tender of the rent for this month and succeeding

months, if any, and the acceptance thereof does not operate in any way as a waiver of his option to purchase nor prejudice any of his rights under said option.

"This lease contract also contains an option to extend the lease at the same terms of another stated period."

The check for the January rent was retained by the executor.

On January 8 Rosenthal filed this suit against Rich, the executor, asking for specific performance, alleging that Rosenthal had exercised his option to purchase and asking that the executor be required to convey the property to him according to the terms of the contract. The next day, January 9, the parties secured from the probate court an order providing that neither side would be prejudiced by the payment or acceptance of the rent during the time the validity of the contract was in litigation. Rosenthal continued to pay $100 per month rent to and including the month of July, 1951.

Subsequently the executor filed a motion to dismiss the cause, alleging that in ceasing to pay rent Rosenthal had abandoned his alleged right to purchase. This motion was overruled. On November 20, 1951, Rich, the executor, filed an unlawful detainer suit against Rosenthal in Circuit Court, asking for possession of the property and damages for the detention thereof. Later Rosenthal deposited $12,000 in Chancery Court as the purchase price.

Without going into detail with reference to all the pleadings that were filed, suffice it to say that the cause finally went to trial in Chancery Court, and is here on these issues: (1) Was Lindsey competent to make the contract giving Rosenthal the option to purchase? (2) Was the contract procured by Rosenthal by the use of undue influence? (3) Was the contract in full force and effect at the time Rosenthal exercised his option to purchase? (4) What effect does the mortgage from Lindsey to Rich have on Rosenthal's option to purchase? (5)

Just what is the status of the life estate left to Odie Smith, now Odie Smith Moss, under the terms of the will?

A matter in Probate Court dealing with the rights of Odie Smith Moss in which the Probate Court held that she acquired a life estate in the second story of the building subject to maintenance at her expense, and which was appealed by Mrs. Moss contending that she acquired an absolute life estate without any qualification thereon, has been consolidated with the appeal from the Chancery Court and is hereby dealt with accordingly.

In the Chancery Court the Chancellor decreed that the lease contract giving Rosenthal the option to purchase is valid; and Rich, the executor, was ordered to execute a deed to Rosenthal for the property involved, free and clear of all liens and mortgages of any kind, subject however to a life estate of Odie Moss in the upper story of the building. The decree provides that she must keep the premises in reasonable repair as required by the will; and further, that the value of the life estate shall be ascertained and the amount thereof paid to Joe Rosenthal out of the $12,000 on deposit in the registry of the court, and the balance of the money be paid to Rich, the executor and trustee of the estate of Herbert M. Lindsey.

All of the parties have appealed. Rich, the executor, and the relatives of Lindsey contend, first, that Lindsey by reason of alcoholism was incapable of making a valid contract; second, that the contract was obtained by undue influence; third, that if there is a valid contract Rosenthal has not complied with the conditions thereof and therefore cannot exercise the option to purchase; fourth, that Rosenthal is precluded from exercising the option to purchase by failure to make a tender of the $12,000; fifth, that the contract is subject to the mortgage and life estate.

We cannot say the Chancellor's finding that Lindsey was capable of entering into a valid contract is contrary to a preponderance of the evidence. In fact, there is no substantial evidence to the effect that he was incapable

of entering into a valid contract. It is true that the evidence shows he had been a habitual user of alcohol for about five years immediately preceding his death, but the record is utterly void of any testimony that the use of alcohol had caused a condition that would render him unable to carry on his business. A handwriting expert testified that Lindsey's signature on the contract, as compared to his signatures written before and after the date of the contract, indicated that Lindsey was not normal at the time he signed the instrument; that he was probably under the influence of something. The handwriting expert was qualified to testify as to the genuineness of the signature, or whether it was slightly different from signatures made on other dates; but he was not qualified to testify as to just what caused the signature to be slightly different. His testimony certainly cannot be said to constitute substantial evidence to the effect that Lindsey was incompetent on the day he signed the contract. There was other testimony to the effect that Lindsey had been drinking regularly during the five year period, but none of this testimony had the effect of showing that he was not fully capable of transacting business. As to when a contract may be rescinded on account of drunkenness, see *Cook* v. *Bagnell Timber Co.*, 78 Ark. 47, 94 S. W. 695.

Likewise as to the allegation of undue influence, there is no substantial evidence to support this charge. Appellant argues what appears to him to be some suspicious circumstances, but such suspicions are not evidence, and we are unable to find any evidence in the record giving rise to an inference that anybody exerted any undue influence over Lindsey.

Next it is contended that Rosenthal forfeited his right to purchase under the option by not paying rent subsequent to July, 1951. It will be recalled that there was some doubt as to whom the $12,000 purchase money should be paid; that Rosenthal's attorney talked to the attorney for Rich, the executor, and wrote to him on the 2nd of January that Rosenthal desired to exercise his option to purchase, and was willing and ready to pay the

full purchase price in cash, and would deposit the cash with any responsible person that might be agreed upon until the transaction could be closed. In his reply on January 4, the attorney for the executor stated that he did not have sufficient knowledge or information to know whether the purported contract was valid, and suggested that the rent money could be deposited in the bank until such time as the validity of the contract could be determined. Rosenthal's offer to deposit the $12,000 at that time was not accepted. The next day, January 5, the rent was paid to the executor. In his brief on appeal the attorney for the executor says: "If the five day delinquency of one month's rent were all, perhaps the court would overlook it as being of little significance," but appellant contends that by stopping the payment of rent several months later Rosenthal forfeited his right to purchase. Rosenthal had exercised his right to purchase in his letter of January 2, and he was under no obligation to pay rent thereafter. "Where the option to purchase is duly exercised by an election to purchase, the relation of landlord and tenant ceased and that of vendor and purchaser arises. The lessor may not, by a breach of a covenant to convey, compel the continuance of the relation of landlord and tenant for the purpose of creating a breach of covenant to pay rent so as to enable him to declare the option forfeited; and the lessee may not repudiate his election and reëlect to hold under the lease, in the absence of a provision therefor in the contract. The possession of the lessee becomes that of owner, and he will be entitled to such other rights as may be said to attach to his character as vendee, in so far as the rights of the parties are not peculiarly controlled by express stipulations in the lease." 51 C. J. S. 640. Rosenthal wrote the letter on January 2 stating that he desired to exercise the option, and offered to put the money up with anybody named by the executor. He had done everything he could do at that time, and when his offer was not accepted he promptly filed suit asking for specific performance.

Appellant Rich next contends that Rosenthal forfeited his option to purchase by failing to make tender of the $12,000 at the time he expressed a desire to exercise his option. In the first place, Rosenthal offered to put the money up with anyone Rich would suggest. Rich declined this offer which in itself would be a waiver of the tender even if a tender were necessary at that time. In *Doup* v. *Almand*, 212 Ark. 687, 207 S. W. 2d 601, we quoted from *Read's Drug Store* v. *Hessig-Ellis Drug Co.*, 93 Ark. 497, 125 S. W. 434, as follows: "On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done. *Isham* v. *Greenham*, 1 Handy 361, quoted in *Dodd* v. *Bartholomew*, 44 Ohio St. 171, 5 N. E. 866; *Union Central Life Ins. Co.* v. *Caldwell*, 68 Ark. 505, 58 S. W. 355; *Weinberg* v. *Naher*, 51 Wash. 591, 99 Pac. 736, 22 L. R. A., N. S. 956, and 28 Am. & Eng. Ency. Law, p. 8." See, also, *Bender* v. *Bean*, 52 Ark. 132, 12 S. W. (180) 241, and *Hollowoa* v. *Buck*, 174 Ark. 497, 296 S. W. 74. However, here the contract does not provide that a tender be made at the time of exercising the option; on the contrary, it appears that the parties contemplated that if Rosenthal indicated his desire to exercise the option, the next step would be the furnishing of abstract of title by Lindsey's executor. The contract provides: "It is further agreed and understood that in the event the option to purchase as herein contained shall be exercised by the said Lessee, *then* the said Lessor binds himself to furnish a complete abstract of title showing in him a good merchantable title." The executor had a copy of the contract. At no time did he offer to furnish the abstract of title as provided by the contract. In view of the provision with reference to furnishing an abstract of title, it can hardly be said that the parties contemplated a tender of the full purchase price by the purchaser before he had an opportunity to examine the abstract. In *Northern Illinois Coal Corporation* v. *Cryder*, 361 Ill. 274, 197 N. E. 750, 101 A. L. R. 1420, the Court said: "Where

an option to purchase land within a stated time requires the optioners, upon the request to furnish an abstract showing good title in them, and allows the optionee a reasonable time for examination of the abstract, the optionee is not required on acceptance of the option, to tender the purchase money within the stipulated time, but the contract is to be performed within a reasonable time after acceptance."

With reference to the executor's contention that in exercising the option to purchase Rosenthal takes the property subject to the mortgage in the sum of $3,000 to Rich, and also subject to the life estate bequeathed to Odie Smith Moss, it is true the option to purchase is subject to the mortgage, since the mortgage was first recorded; however Rosenthal is entitled to deduct from the purchase price the amount necessary to pay the indebtedness secured by the mortgage; but since the decree of the Chancellor provides that the mortgage shall be paid out of the $12,000 on deposit in court, the same end is attained.

Now as to the interest of Mrs. Moss, her life estate is subject to the option to purchase. As devisee under the will she takes only what the testator had at the time of his death; and since specific performance can be compelled by reason of the contract executed by Lindsey, the life estate acquired under the terms of the will is subject to the contract. In *Hobbs* v. *Lenon,* 191 Ark. 509, 87 S. W. 2d 6, it is said: "It is fundamental that heirs and devisees take only such rights as the intestate or testator had in the property at the time of his decease. The debts of the deceased must be paid before the distributees, be they heirs or legatees, receive anything. The rights of heirs or distributees can never be greater or rise above the rights of the intestate or testator." However, Mrs. Moss is entitled to the value of the life estate to be computed according to Act 122 of 1951, Ark. Stats., § 50-701-6, and to be paid out of the purchase price of the property.

That part of the will making it the duty of Mrs. Moss to keep the interior of the second floor in repair would be relevant only if Rosenthal continued as a renter and did not exercise the option to purchase. Therefore it is inapplicable.

That part of the Chancery decree holding that Rosenthal legally exercised his option to purchase and that the mortgage be paid out of the $12,000 on deposit in court is affirmed; but those parts of the decrees in both the Probate and Chancery Courts holding that Mrs. Moss's life estate is not subject to the option to purchase, and further holding that under the terms of the will she is responsible for repairs, are reversed with directions to enter decrees in that respect not inconsistent herewith.

Mr. Justice McFADDIN dissents.

ED. F. McFADDIN, J. (dissenting). Without lengthening this opinion by quoting authorities or the evidence, I merely state that I entertain the following views about these cases:

(1)—Rosenthal lost his right to obtain a deed when he failed *for five months* to make the rental payments. He had joined with Rich in asking the Probate Court to allow him to make the payments without prejudice. Then Rosenthal failed for five months either to make the payments or to deposit the $12,000.00 in the Registry of the Court. So I concluded that he lost his right.

(2)—Mrs. Odie Smith Moss had a contract with Lindsey that she would receive the upper floor of the building for her life, if she looked after and cared for Lindsey during his life. This was a contract, and it was prior and superior to the Rosenthal option; and Mrs. Moss was in possession under contract when Rosenthal's opinion came into existence. Mrs. Odie Smith Moss performed her contract, and her rights are based on that contract, rather than the will; and her rights are superior to Rosenthal's option.

Because of the views herein expressed, I respectfully dissent.