### READ'S DRUG STORE *v.* HESSIG-ELLIS DRUG COMPANY.

### Opinion delivered January 31, 1910.

1. CONTRACTS—CONSTRUCTION.—A contract is to be considered as a whole, and different sections referring to the same subject-matter are to be read together. (Page 501.)

2. SALES OF CHATTELS—CONSTRUCTION.—Where a contract for the sale of drugs stipulated that the vendee should have the right to return the unsold drugs "at the expiration of the Arkansas advertising contracts," and that the vendor would do a certain amount of advertising in papers published in Arkansas during the twelve months following the date of the delivery of the goods to the vendee, the clause giving the right to return unsold drugs referred to the advertising to be done under the particular contract, and not to that to be done under other and disconnected contracts. (Page 502.)

3. TENDER.—WHEN UNNECESSARY.—Whenever the act of one party, to whom another is bound to tender money, services or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. (Page 502.)

4. SALES OF CHATTELS—SET OFF.—In an action for goods sold the vendee could set off the price of other goods previously sold to him which the vendor had agreed to take back from the vendee at 'their invoice' price if they remained unsold at a certain time. (Page 503.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; reversed.

*Rose, Hemingway , Cantrell & Loughborough,* for appellant.

1. It was error to refuse defendant the right to open and close the argument. The burden of proof, under the pleadings, was on defendant. 32 Ark. 597; 13 Ark. 479; 29 Ark. 153; 82 Ark. 331.

2. The testimony of Brown as to the conversations and propositions had, etc., was inadmissible. They were made prior to the final agreement. Where a contract is reduced to writing, parol evidence is admissible to vary, alter or explain it.

3. A tender does not have to be made where a party is advised beforehand that if made it will not be accepted. 68 Ark. 521.

*M. C. Hutton* and *Campbell & Stevenson,* for appellee.

1. Plaintiff was entitled to open and close. Kirby's Digest, § § 3106, 3107-6196.

2. There was no error in allowing the witness Brown and others to testify as to conversations, etc., with Read. The contract was a *verbal one.* L. R. 4 App. Cas. 311.

HART, J. On the 12th day of January, 1909, the Hessig-Ellis Drug Company brought suit in the Pulaski Circuit Court against Read's Drug Store for $580.56 for goods sold on account. Both parties to the suit are corporations.

The defendant admitted the purchase of the goods, but denied that it was indebted to the plaintiff in said sum or in any other sum whatever. It pleaded:

First. That it had entered into a written contract with the plaintiff on the 18th day of December, 1907, whereby it purchased $672 worth of Muco-Solvent, and that it was provided in said contract, among other things, that defendant should have the right to return to plaintiff all Muco-Solvent which it might have on hand twelve months after the delivery of said Muco-Solvent to defendant, at the invoice price thereof; and that it had on hand and unsold $623.67 worth of said Muco-Solvent. That it

had tendered said goods to plaintiff, but plaintiff had refused to accept or receive the same and repay the defendant the invoice price therefor; and that plaintiff was therefore indebted to defendant on said Muco-Solvent contract in the said sum of $623.67.

Second. That at the time defendant purchased the bill of staple goods, towit, on May 1, 1908, it was agreed between plaintiff and defendant that plaintiff should carry defendant's account for staple goods to the amount of the Muco-Solvent purchased until the time matured when defendant could return said Muco-Solvent and receive back the purchase price therefor, and that defendant should have credit on the bill for staple goods by the amount of Muco-Solvent which it had on hand.

The facts are as follows:

The Hessig-Ellis Drug Company, by a written contract, sold to Read's Drug Store a certain quantity of a medical preparation known to the trade as Muco-Solvent. The goods were delivered on January 12, 1908. The contract contained a provision that the Hessig-Ellis Drug Company should take back all goods unsold remaining in the hands of Read's Drug Store at the expiration of the Arkansas advertising contracts. It also contained another clause whereby the Hessig-Ellis Drug Company agreed to do a certain amount of advertising in the Arkansas Gazette or Arkansas Democrat, or both, papers published in the city of Little Rock, where Read's Drug Store carried on its business. The advertising was to be done during the twelve months following the date of the delivery of the goods to Read's Drug Store. By the terms of the contract, the Muco-Solvent was to be paid for in 30, 60, 90 and 120 days from the date of the contract.

A. C. Read, who owned a controlling interest in the stock of Read's Drug Store, says that "we put the Muco-Solvent on sale in four drug stores in the city of Little Rock, and tried to push the sale of it, but found it to be unsalable. Read's Drug Store paid for the Muco-Solvent according to the terms of the contract; but complained to the Hessig-Ellis Drug Company that the preparation was worthless and could not be sold. Mr. A. C. Read notified the Hessig-Ellis Drug Company that he expected to return the goods unsold at the expiration of the year and get back their purchase price. The Hessig-Ellis Drug Company replied that they had other contracts in the State of Arkansas,

and claimed that, as long as they were in force, and advertising was done in the State of Arkansas, Read's Drug Store had no right to return the goods. Mr. A. C. Read continued to claim that he had a right to return the unsold goods at the expiration of the time for advertising under the terms of the contract above referred to. Read also continued to complain that he could not sell the goods, and on that account would be out the use of the purchase price of the goods until the end of the year, the date of the expiration of the advertising contracts provided by his contract. A. C. Read proposed to A. M. Brown, a salesman of the Hessig-Ellis Drug Company, that he would buy about $3,000 of staple goods from his company provided that company would carry about $675, the amount paid for the Muco-Solvent, until the Muco-Solvent transaction was settled. Brown did not think any amount should be specified, as he hoped to make Read's Drug Store a regular and permanent customer of his house for staple drugs. Brown made a proposition to Read, which is embodied in the following letter:

"Little Rock, May 16, 1908.

"Hessig-Ellis Drug Company, Memphis, Tenn.

"Dear Sirs: Regarding our proposed negotiations with Mr. A. C. Read, this city, beg to advise that I have made Mr. Read the following proposition: The amount of business to be given us by him I deem it, however, expedient to leave out. 'In consideration of his business, or that part of it which we can handle, we agree to carry his account on our books for the amount of his purchase of Muco-Solvent until such time as the Muco-Solvent has been disposed of to his satisfaction.' Mr. Read assures us of quite a good deal of business, but I did not consider it good policy to state the amount required, as he would be much more liable to continue his business with us under other circumstances. I wish you would either write me or Mr. Read a confirmation of this agreement and greatly oblige,

"Yours truly,

"A. M. Brown."

The letter was shown to Mr. Read, who acceded to the terms of it. The letter was then sent to the Hessig-Ellis Drug Company for its approval, which was obtained. Read's Drug Store bought from the Hessig-Ellis Drug Company between May 1 and June 1, 1908, a miscellaneous bill of drugs, to the amount of $580.56.

Because Read's Drug Store failed to purchase any more goods, the Hessig-Ellis Drug Company demanded payment of this bill, and, upon payment being refused on the ground that it was not due until the expiration of the Muco-Solvent contract, the account was placed in the hands of a lawyer for collection. Read's Drug Store offered to return the Muco-Solvent in payment of the account. The attorney for the Hessig-Ellis Drug Company declined to receive it on the ground that he had no authority to do so, but said he would notify his clients of the offer, which he did.

On the 12th day of January, 1909, one year after the delivery of the Muco-Solvent preparation to Read's Drug Store, the Hessig-Ellis Drug Company brought this suit. On May 21, 1909, the day of the trial of this cause in the lower court, an offer was again made to return the unsold Muco-Solvent, which offer was refused.

Upon a trial before a jury, a verdict was rendered in favor the Hessig-Ellis Drug Company for the amount sued for, and Read's Drug Store has appealed from the judgment rendered against it.

It seems plain to us that, under the terms of the contract of sale, Read's Drug Store had the right to return the unsold Muco-Solvent at full invoice price at the expiration of one year from the date of the delivery of the goods. The contract in express terms gives the right, "at the expiration of the Arkansas advertising contracts." The clause just quoted evidently refers to the advertising to be done under the terms of the contract between the parties, and does not mean advertising to be done under other and different contracts not in anywise referred to and not having any connection whatever with the contract under consideration. The construction sought to be placed upon the contract by the Hessig-Ellis Drug Company might render entirely inoperative the clause which provides for a return of the goods unsold; for the company might be advertising under different contracts in other parts of the State for an indefinite number of years. It is a fundamental rule of construction that a contract is to be considered as a whole, and that different sections referring to the same subject-matter are to be read together. When so construed, it is obvious that the right to return the unsold Muco-Solvent existed at the date of the expiration of the advertisement provided for in the contract between the parties to this suit, which, as we nave already

seen, was on January 12, 1909. The Muco-Solvent contract was not merged into or superseded by the later contract in reference to the sale of staple drugs.

The only effect of the latter was to postpone the payment of a sufficient amount of drugs sold under it to the time when a settlement should be made between the parties under the Muco-Solvent contract. The record shows that this view of the law was ignored by the trial court, and that the instructions given in the court below ignored the right of the vendee to return to the vendor the unsold Muco-Solvent under the first contract, but that the court based its instructions to the jury on the theory that the only question in the case was whether or not there had been an agreement that the bill sued for should not become payable until the parties had made a settlement of the Muco-Solvent controversy. This was error, for, as we have already seen, the second contract did not supersede the Muco-Solvent contract.

The court held that the vendee, Read's Drug Store, waited too long before attempting to assert that right. In other words, the trial court held that the right to return the goods existed only for a reasonable time, and that from January 12, 1909, the date when the right could have been exercised to May 21, 1909, when the right was sought to be asserted, was unreasonable. But the court did not take into consideration the evidence that the vendor denied the right of the vendee to return the goods.

"On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done." *Isham* v. *Greenham*, 1 Hardy 361, quoted in *Dodd* v. *Bartholomew*, 44 Ohio St. 171; *Union Central Life Ins. Co.* v. *Caldwell*, 68 Ark. 521; *Weinberg* v. *Naher*, 22 L. R. A. (N. S.) 956, and 28 Am. & Eng. Ency. Law, p. 8.

In the present case Read's Drug Store had been asserting their right and intention to return the unsold Muco-Solvent and receive back the purchase price when the time at which they could do so should arrive. They offered to do so when suit on the account for staple drugs was threatened. The Hessig-Ellis Drug Company had denied their right to return these goods, and instituted the present suit on the very day the right to return attached,

although it had notice that the Read's Drug Store was insisting on such right and would exercise it when the time for so doing arrived. It is manifest, then, that a formal tender would have been refused. This was "a sufficient reason for not making the tender, on the principle that the law does not require one to do vain or useless things." Therefore the court erred in not submitting to the jury the question of the waiver of tender. .

And, if that issue had been found in favor of Read's Drug Store, it had the right to set off the invoice price of the unsold Muco-Solvent against the account of the Hessig-Ellis Drug Company against it for the staple drugs.

Other assignments of error are pressed upon us as grounds for reversal, but, as they are in regard to matters that will not likely arise on a new trial, we will not consider them.

For the error of the court in not submitting the question of the waiver of a tender of the unsold Muco-Solvent by the Hessig-Ellis Drug Company, and for the error in the court's instructions, as indicated in the opinion, the judgment must be reversed, and the cause remanded for a new trial.