DOUP *v.* ALMAND.

4-8369                           207 S. W. 2d 601

Opinion delivered January 19, 1948.

*Reinberger & Eilbott,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

MINOR W. MILLWEE, Justice. This is an action by appellee, John P. Almand, to recover compensation for his services as an architect in the preparation of plans and specifications for re-construction of an ice plant for appellant, H. C. Doup, in the City of North Little Rock, Arkansas. The cause was tried before the court without a jury upon the testimony of the parties and one other

witness. This appeal is from a judgment in favor of appellee in the sum of $720.

It is undisputed that the parties entered into an oral agreement whereby appellant employed appellee to draw plans and specifications for rebuilding appellant's plant which had burned. It is also undisputed that an architect's fee of 6% of the cost of the building was to be paid under the agreement, provided appellee also. supervised construction of the building.

The testimony of appellee is to the following effect: In July or August, 1945, appellant approached appellee at his home in Little Rock where he maintained his office and employed him to draw plans and specifications for the plant for a fee of 6% of the cost of the completed structure. Appellant furnished appellee with rough drawings of the plan of construction contemplated. The parties held several conferences over a period of three or four weeks in which a complete understanding was reached regarding the kind of materials to be used in the building and other details of construction. Appellee then informed appellant that the plans would be completed on a certain date and appellant agreed to return at that time. Appellant failed to appear on the appointed date and appellee called him at his home in Pine Bluff several days later. Appellant agreed to come to Little Rock the following Monday or Tuesday. Appellant again failed to appear on the dates designated, but, in response to another telephone call from appellee, appeared about a week later.

The plans and specifications were then ready and lying on the table in the room where the parties conferred, but appellant showed no interest in the plans and stated for the first time that he was not going to invest more than $10,000 in the building. Appellee had previously informed appellant that the brick alone would cost approximately that amount and appellant had made no objection to the cost of the different materials to be used in the construction of the building. Appellee then informed appellant that he was due part of his fee and would like to talk to him about that, but appellant re-

plied that he was not paying anything to anybody that day and walked away. Appellant did not ask to see the plans and specifications and appellee did not offer them after appellant indicated that he had no interest in them and refused to consider payment of any part of the fee then due.

Appellee further testified that construction of the building, based on the plans and specifications he had drawn, would cost $20,000; and that under the practice recommended by the American Institute of Architects a fee of 75% of 6% of the cost of construction is due on completion of the plans and specifications and the final 25% is due where the architect supervises construction. Appellee rendered a bill to appellant for $900 based on this method of calculation of his fee and payment was refused. The plans and specifications were introduced in evidence.

Appellant testified that appellee agreed to draw the plans and specifications for 3% of the cost of construction and an additional 3% provided he also supervised the erection of the building. He also testified that he did not employ appellee to determine the cost of the building and did not object to the proposed cost thereof; that appellee advised him that the building would cost $14,000 or $15,000; he did not remember saying he was not going to invest more than $10,000 in the building.

Appellant further testified that appellee seemed to be disinterested in getting out the plans and delayed making them in order that he might do other work; and that he did not draw the plans according to appellant's instructions. While appellant testified that appellee did not deliver or offer to deliver the plans, he admitted that he did not ask for them. He also testified that he did not ask appellee to stop work on the plans. He later employed another architect to draw the plans. At their last conference appellee demanded a fee of $900 and that one-half of it be paid at that time, which appellant refused to do.

Mitchell Seligman, an architect, testified that in arriving at a fee for completion of plans and specifica-

tions the architect estimates the cost of the building and bases his fee thereon. The customary charge is 6% of the cost of construction and under the practice of witness 3.6% is charged for plans and specifications and 2.4% for supervising the work. While the American Institute of Architects recommends the practice followed by appellee, each architect is permitted to adopt his own procedure in fixing fees.

It is evident from the testimony just recited that the question whether appellee performed the services required of him under the agreement and drew the plans and specifications according to the instructions of appellant is sharply disputed. In 6 C. J. S., Architects, p. 308, the textwriter states: "Where the architect prepared plans and specifications for a building pursuant to an unconditional order or direction of the owner, he is entitled to recover for his services whether or not the plans are used if they substantially comply with the employer's instructions. So his right to compensation will not be defeated by the fact that the building for which the plans are prepared was never constructed or by the fact that the time is not such as to render it expedient to build." The trial court sitting as a jury necessarily found under conflicting testimony that appellee substantially complied with the instructions of appellant in drawing the plans and specifications. There is substantial evidence to support this finding.

Appellant states his principal contention for reversal of the judgment as follows: "It is the contention of the appellant that the appellee, having failed to deliver or even tender, according to the evidence, the plans and specifications for the construction of the building, the appellant is not liable in any way to the appellee."

In 6 C. J. S., Architects, p. 311, § 14, it is said: "In order to entitle the architect to compensation for drawing plans there must be a delivery or tender of the plans prepared, although it has been held that where the owner refuses to accept the plans no tender is necessary in order to entitle the architect to compensation, as he is not required to do an idle act." The general rule in reference to

the necessity of tender is stated in *Read's Drug Store* v. *Hessig-Ellis Drug Co.,* 93 Ark. 497, 125 S. W. 434, as follows: "On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done. *Isham* v. *Greenham,* 1 Handy 361, quoted in *Dodd* v. *Bartholomew,* 44 Ohio St. 171, 5 N. E. 866; *Union Central Life Ins. Co.* v. *Caldwell,* 68 Ark. 505, 58 S. W. 355; *Weinberg* v. *Naher,* 51 Wash. 591, 99 Pac. 736, 22 L. R. A., N. S. 956, and 28 Am. & Eng. Ency. Law, p. 8." See, also, *Bender* v. *Bean,* 52 Ark. 132, 12 S. W. (180) 241, and *Hollowoa* v. *Buck,* 174 Ark. 497, 296 S. W. 74.

It is true that there was no actual manual delivery or offer of the plans to appellant. When the evidence is given its strongest probative force in favor of appellee, the trial court was warranted in finding either that an actual tender of the plans and specifications was made or that such tender would have been an idle and useless act. According to the testimony of appellee the plans had been completed in conformity to the instructions of appellant on the date of their last conference and appellant had been so advised. The blueprints were lying on the conference table when appellant indicated for the first time that he was not going to invest more than $10,000 in the building and would not accept the plans as drawn. He made no request for a change in the plans, nor did he ask to see them, but walked away when appellee broached the subject of compensation for his services. Under these circumstances a formal tender of the plans by appellee would have been a vain and futile act which the law does not require.

It is also insisted that the judgment is excessive. At the conclusion of the testimony, the record recites: "Thereupon, the Court, having heard the evidence and being well and sufficiently advised as to the law and having heard the arguments of counsel renders its decision in favor of the plaintiff in the sum of $720 with interest at 6% from April 24, 1946, until paid; to which

action of the Court the defendant at the time asked that his exceptions be saved and duly noted of record, which is hereby accordingly done.'' Appellant made no request for separate findings of fact and law as provided in § 1534 of Pope's Digest, and none were made by the trial court. The formal judgment recites ''that the plaintiff is entitled to judgment against the defendant in the sum of $720, being 6% of $12,000, the cost of the building for which the plaintiff, an architect, drew plans and specifications . . .'' Appellant now contends that since the building was never constructed appellee could not have been entitled to more than 75% of the $720 allowance made by the trial court under appellee's testimony and that the judgment is, therefore, excessive by $180. But this is a question which should have been raised in the motion for new trial and may not be raised for the first time here. Error in the assessment of the amount of recovery is made a ground for new trial by § 1536, Pope's Digest, but appellant did not allege the excessiveness of the judgment as a ground in his motion for a new trial, and for that reason we cannot consider it here. *St. L. I. M. & S. Ry.* v. *Branch,* 45 Ark. 524; *Glasscock* v. *Rossgrant,* 55 Ark. 376, 18 S. W. 379; *Battle* v. *Draper,* 149 Ark. 55, 231 S. W. 869; *McWilliams* v. *Kinney,* 178 Ark. 513, 11 S. W. 2d 1; *Jelks* v. *Rogers,* 204 Ark. 877, 165 S. W. 2d 258.

In the case of *Kansas City Southern Railway Company* v. *Short,* 75 Ark. 345, 87 S. W. 640, there was a judgment in favor of appellee for $180 in an action against the railway company for conversion of four bales of cotton. The court there said: ''As heretofore indicated, there was sufficient evidence for the jury to find the value to be $160, and the amount above that is excessive, but the assessment of excessive damages is specifically made ground for new trial. Kirby's Dig., § 6215. The cases are too numerous for citation that errors not assigned in the motion for new trial are waived. The court could and doubtless would have corrected this error in the lower court; but whether it would or not, this court will not correct it until the lower court is first invited by the motion for new trial to do so, and then

given the opportunity." So, here, if the judgment was erroneous in assessing the amount of recovery the trial court should have been given an opportunity to correct it before the question can be considered here. Moreover, the evidence for appellee in the case at bar was sufficient to warrant a judgment for a sum greater than actually found by the trial court.

Affirmed.