QUALITY MOTORS, INC., *v.* HAYS.

4-9025                                                              225 S. W. 2d 326

Opinion delivered December 12, 1949.

*Frank Snellgrove, Jr.,* and *Charles Frierson,* for appellant.

*Ivie C. Spencer* and *Homer E. McEwen,* for appellee.

DUNAWAY, J. Johnny M. Hays, by his next friend, Dr. D. J. Hays, brought this suit to disaffirm his purchase of a Pontiac automobile and recover the purchase price of $1,750 from defendant Quality Motors, Inc.

On January 21, 1949, Johnny Hays, a minor sixteen years old, went to the Quality Motors, Inc., to inspect and test a Pontiac car. When E. C. Buttry, salesman for Quality Motors, raised the question of Johnny's age, he was told that Johnny's father in New York had sent him the money to buy the car. The salesman then refused to sell unless the purchase was made by an adult. Johnny left the salesman and returned shortly

with Harry R. Williams, a young man twenty-three years of age, whom he met that day for the first time. Johnny then gave to Quality Motors, Inc., a cashier's check on the Citizens Bank of Jonesboro, in the sum of $1,800 which was made payable to him, in payment for the car. A bill of sale was made to Harry Williams. The salesman then recommended a Notary Public who could prepare the necessary papers for transferring title to the car to Johnny, and drove the two boys to town for this purpose. .Williams did transfer title, and the Pontiac was delivered by the salesman to Johnny at Arkansas State College, where Dr. Hays, Johnny's father, was a teacher.

When Dr. Hays learned of his son's purchase he called E. C. Perkins, one of the owners of Quality Motors, Inc., on the night of January 25, 1949. Perkins knew nothing of the transaction and suggested that Dr. Hays call the motor company the next morning. On the morning of January 26, Dr. Hays talked to the salesman who had handled the transaction, and asked that defendant company take the car back. This the defendant refused to do. No physical tender of the car was made; Johnny had it out of town. The car was returned to Jonesboro on January 26, when Dr. Hays had his son arrested; it was then stored in a hangar at Arkansas State College. On January 27 Dr. Hays again called Quality Motors, Inc., and was informed the car would not be taken back. He then went to the office of his attorney where he once more called Quality Motors, Inc., and was told by W. E. Ebbert, one of the owners, that they would not accept the car and return the consideration for its purchase, but would try to sell it for him if they could.

Suit was filed on February 2, 1949. That same day plaintiff's attorney wrote the defendant a letter stating that return of the car had been refused, but that the automobile was in storage and would be turned over to Quality Motors, Inc., at any time it would be accepted.

On February 12, 1949, while Dr. Hays was out of town, Johnny found the car keys and bill of sale and took the car to Kentucky where his grandmother lived.

On March 21, he returned to Jonesboro and asked Quality Motors for an estimate on repairs to the car which had been in a wreck. On this occasion he had an extended conversation with Buttry and Ebbert, who tried to persuade him to leave the car there and not go back to Kentucky as he told them he planned to do at once. At this time Quality Motors was still refusing to accept the car and return the purchase price. The suggestion was that the car be left with them for repairs "until this thing is settled." Johnny made a telephone call to his mother and immediately departed for Kentucky where the car was in a second and more serious wreck. At the time of trial the car was in Kentucky, subject to a repair bill for $557, and an attachment for $125, and not in running condition.

The special chancellor ordered the plaintiff to return the car within seven days and withheld final decree until this was done. When the wrecked car was returned, recovery of $1,750 from defendant was decreed.

Defense of this suit was based on these contentions: (1) The sale was to Harry Williams, of lawful age, and not to Johnny Hays, a minor. (2) There was no proper tender of the car. (3) Johnny's action in taking the car after suit was filed to disaffirm the contract of purchase and in wrecking it twice were tortious acts for which he is liable. (4) A minor's contract can only be disaffirmed by the minor and the proof here shows he was resisting disaffirmance.

The special chancellor found that the car was to all intents and purposes sold to the plaintiff, a minor. Appellant does not question this finding on appeal.

Appellant is correct in asserting that the right to avoid contracts is personal to the infant and that he must make the election to disaffirm his contract. *Davie* v. *Padgett*, 117 Ark. 544, 176 S. W. 333; *Crutcher* v. *Barnes*, 207 Ark. 768, 182 S. W. 2d 867. But it is also held in the *Davie* case that the infant's legal action must be brought by his next friend or guardian. In the case at bar Johnny Hays testified positively that he desired to disaffirm his purchase and return the car to the seller.

The record does not support appellant's argument that the father is attempting to disaffirm over the objections of his infant son. The action was properly brought.

The law is well settled in Arkansas that an infant may disaffirm his contracts, except those made for necessaries, without being required to return the consideration received, except such part as may remain in specie in his hands. [But see No. 9013—*Jones et al.* v. *Caldwell,* ante, p. 260, 225 S. W. 2d 323—where the rights of an innocent purchaser are discussed.] *Stull* v. *Harris,* 51 Ark. 294, 11 S. W. 104, 2 L. R. A. 741; *Arkansas Reo Motor Car Co.* v. *Goodlett,* 163 Ark. 35, 258 S. W. 975. The facts in the latter case are similar to those in the instant case: A court of equity there decreed the recovery of the total amount paid on a car by a minor who returned it in a wrecked and practically valueless condition.

We do not find any merit in appellant's contention that no proper tender of the car was made when appellee· sought to disaffirm his purchase. The undisputed testimony shows that Dr. Hays and his attorney offered to return the car on several occasions, but were informed that appellant would not accept it. That it was not actually delivered to Quality Motors when the suit was filed is appellant's own fault. The law does not require that a tender be made under circumstances where it would be vain and useless. *Hollowoa* v. *Buck,* 174 Ark. 497, 296 S. W. 74; *Read's Drug Store* v. *Hessig-Ellis Drug Co.,* 93 Ark. 497, 125 S. W. 434.

Appellant's most serious contention is that the plaintiff is liable for damages to the car which occurred while he was driving over the country, after he had slipped the car from its storage place and while the suit to disaffirm was pending. In order to obtain any relief on this score, it must be shown that plaintiff was guilty of conversion in taking the automobile. Conversion is the exercise of dominion over property in violation of the rights of the owner or person entitled to possession. *Thomas* v. *Westbrook,* 206 Ark. 841, 177 S. W. 2d 931. In advancing this argument appellant is in an inconsistent position. In its answer, appellant denied sell-

ing the car to appellee, and was stoutly insisting that it did not have to take the car back. If that was true appellant was not the owner of nor entitled to possession of the car. Until the court decreed return of the car and recovery of the consideration paid, plaintiff still had title to the car. One cannot be liable for conversion in taking his own property.

The situation in the case at bar is easily distinguishable from that in *Smith* v. *Moschetti,* 213 Ark. 968, 214 S. W. 2d 73, relied upon by appellant. There Smith, a minor, bought an automobile with money furnished by Moschetti, with the agreement to deliver the car to Moschetti. Instead, Smith fraudulently converted the car to his own use. In affirming a judgment for the money advanced in purchasing the car we said (at p. 974): "The fact that appellee's cause of action grew out of his agreement with appellant will not shield the latter from liability for his fraudulent conversion of the automobile, which is in itself an independent and willful wrong."

In the *Moschetti* case the minor held the car as trustee or bailee for the real owner against whom the tort was committed; in the instant case Quality Motors, Inc., was insisting at the time of the alleged conversion by Johnny Hays, that it did not have to accept return of the car. Ebbert, one of the owners of Quality Motors, Inc., testified that during his conversation with his employees in regard to keeping the car in the shop after the first wreck, he told them they could not make Johnny leave it. "Well, it's not our car," was his statement at that time. In these circumstances it certainly cannot be said appellee's possession was that of a bailee or trustee.

Appellant knowingly and through a planned subterfuge sold an automobile to a minor. It then refused to take the car back. Even after the car was wrecked once, it was in appellant's place of business, and appellant was still resisting disaffirmance of the contract. The loss

which appellant has suffered is the direct result of its own acts.

The decree is affirmed.