6

BOBBY J. LAWSON ET AL *v.* TAYLOR HOTELS, INC., ET AL

5-4101                                            411 S. W. 2d 669

Opinion delivered February 27, 1967

*Thomas E. Sparks,* for appellant.

*Clint Huey, Paul K. Roberts* and *Tom Haley,* for appellee.

GEORGE ROSE SMITH, Justice. The only question now presented is whether the appellants, Bobby J. Lawson and Lawson & Lyon Hotel, Inc., as lessees of the Southern Hotel in the city of Warren, are entitled to specific performance of an option in the lease by which they had the right to purchase the hotel at any time during the term. The chancellor refused to order specific performance, holding that the lessees' failure to pay or even to tender two delinquent monthly installments of rent precluded them from exercising the option to purchase. We are unable to say that the chancellor was wrong.

The material facts must be winnowed from an extensive record. On December 30, 1963, the appellee Taylor Hotels, Inc., as owner, leased the hotel land and

building to Omar Greene for a term of one year beginning January 13, 1964. The rent was $525.00 a month, payable in advance on the first day of each month. The lessor agreed to keep in force an existing $70,000.00 insurance policy on the hotel. The lease contained an option by which the lessee might buy the property by assuming an outstanding purchase-money mortgage and paying an additional $10,000.00—a third in cash and the rest over a period of ten years.

By assignment the appellants acquired the leasehold interest. H. E. Taylor, president of the corporate lessor, died in June, 1964. In August the lessees began negotiating with Taylor's widow for the purchase of the hotel, not under the option but under a new proposal by which they would have bought the Warren Music Company along with the hotel.

On October 12 the hotel building was destroyed by fire. Two days later the parties reached an agreement about the sale of the music company, but Mrs. Taylor broke off the negotiations about the lots where the hotel had stood. Before the fire she had been asking $30,000.00 for the lessor's equity in the property—a figure considered by the lessees to be excessive. After Mrs. Taylor's withdrawal there was no more discussion about a sale of the hotel site.

When the hotel burned there was pending in the chancery court a suit between Taylor Hotels, Inc., and the estate of H. E. Taylor, involving the ownership of personal property. On November 23 Taylor Hotels filed in that case a petition reporting the availability of insurance proceeds in the amount of $70,000.00 and asking that $64,977.88 of the money be used to satisfy the outstanding mortgage, with the surplus remaining on deposit subject to the court's orders. The next day the court entered an order granting the prayer of the petition.

On December 1 the lessees gave notice that they were exercising the option to purchase and also filed

an intervention in the chancery case. In that pleading they asked for specific performance of the option to purchase and also asked that the surplus insurance proceeds be paid to them. With the intervention the lessees paid into court a third of the $10,000.00 purchase price and tendered their promissory note for the other two thirds. The chancellor, as we have indicated, held that the lessees' failure to make the rent payments that were due on October 1 and November 1 barred their right to specific performance.

We think the chancellor was right. There is no contention that the destruction of the hotel building relieved the lessees of their duty to pay rent. That obligation, absent any agreement to the contrary, was not affected by the fire loss. *Davis* v. *Shepperd,* 196 Ark. 302, 117 S. W. 2d 337 (1938); *Burger* v. *Boyd,* 25 Ark. 441 (1869). Hence the lessees were in the attitude of seeking specific performance when they were themselves in default. That position is not tenable. In *Lacey* v. *Bennett,* 210 Ark. 277, 195 S. W. 2d 341 (1946) we held that a party seeking specific performance "must show that he has all the time been ready, able and willing to perform his part of the contract" and that he has complied with the terms of his contract "by performing or offering to perform, on his part, the acts which formed the consideration of the undertaking on the part of the defendant." In the lease now in question there was no consideration for the option to purchase except the lessees' agreement to pay rent. Yet no tender of the back rent was made during the thirteen months or more that the case was pending in the trial court.

The appellants argue that the lessor would not have accepted such a tender and that therefore they were excused from making what would have been a useless gesture. *Quality Motors* v. *Hays,* 216 Ark. 264, 225 S. W. 2d 326 (1949). There are two flaws in that argument. First, it is by no means certain that the lessor would have refused the tender. The matter was never discussed

between the parties. While it is true that on October 14 Mrs. Taylor dropped the negotiations for a sale to these appellants and that later on she sought to interest another prospective purchaser in the property, we cannot say with confidence that the tender would have been rejected. Mrs. Taylor had already engaged an attorney and no doubt would have consulted him. There is nothing in the record to indicate what his advice would have been.

Secondly, and perhaps more important, the tender of the delinquent rent, amounting to $1,050.00, would, whether it was accepted or not, have gone far toward establishing the lessees' good faith in the matter. That good faith was manifestly open to question. After the negotiations fell through on October 14 the lessees made no move until the lessor had committed itself to using the insurance money to pay the mortgage. Then, perhaps sensing a windfall both in the purchase of the hotel site and in the capture of the surplus insurance money, the appellants for the first time declared their intention to exercise the option to purchase.

We think it significant, however, that even in that declaration they acted in such a way as to avoid the possibility of any financial loss. That is, there was no risk in their tender of a third of the purchase price, because the lessor could not accept that money without binding itself to sell the property. But the situation with respect to the rentals was materially different. That debt, under the law, was unconditionally due. Thus the lessor might have accepted the past-due rent and still have contested the lessees' right to purchase the property. Upon these facts the chancellor was not without justification in attaching controlling importance to the lessees' continued disinclination to pay the rent that was owed.

At the oral argument counsel for the appellants expressed some anxiety about the possibility that the fin-

al decree, by reason of its reference to the chancellor's comprehensive interim findings, might be construed to include a money judgment against the appellants for the overdue rentals. The appellees' attorney disclaimed any such understanding of the decree; so that issue passes out of the case.

Affirmed.

BYRD, J., disqualified.